NEWTON PIERSON v. JAMES H. SPAULDING.

[See 61 Mich. 90.]

*Vendor and vendee—Sale—Inventory of stock—Delivery—Evidence.*

1. Where a contract ·for the sale of a stock of hardware, tinners' tools, and fixtures in a store is not of the whole quantity contained therein, but specifies that the vendor excepts and reserves from the stock whatever the same may inventory over and above the sum of $4,500, which excess the vendor is to take from the stock, and payment is to be made in land and money as soon as the inventory is completed, the delivery of the goods and payment in the mode specified in the contract to be simultaneous, and the result of the inventory showed an excess in value over the $4,500,—

   *Held,* that there could be no delivery so as to pass the title until such vendor had taken out the goods excepted and reserved in excess of $4,500.

2. Where under an arrangement that the store should be kept open for trade while the inventory was being made, and in contemplation that a sale would be consummated in accordance with the within agreement, the vendee made purchases and assisted in selling goods from the stock, and did other acts in expectation that the purchase would be completed as provided for in the contract, and no actual delivery or acceptance was alleged by plaintiff to have occurred until the ninth day of June,—

   *Held,* that testimony as to what the vendee said and did prior to the ninth day of June, and while the inventory was being made, was not admissible for the purpose of showing delivery and acceptance of the goods upon the ninth.[1]

Error to St. Joseph. (Pealer, J.) Argued October 26, 1887. Decided January 5, 1888.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion, and in the former report of the case, found in 61 Mich. 90.

---

[1] Head-notes prepared by CHAMPLIN, J.

*S. M. Constantine* (*Howard & Roos* and *H. H. Riley*, of counsel), for appellant.

*Howell, Carr & Barnard* and *B. E. & L. F. Andrews*, for plaintiff.

CHAMPLIN, J.   Since this case was before us on a former occasion (61 Mich. 90), the declaration has been amended by filing two special counts, in the first of which it is averred that, in consideration of $4,500,—to be paid as follows: $1,500 in money, and the balance in conveying a farm of 63 acres,—the plaintiff agreed to sell, and did sell and deliver, to defendant, his stock of hardware, tinners' tools, and store fixtures, excepting whatever said stock should inventory over and above $4,500, to be paid by defendant upon delivery thereof to him; which delivery the plaintiff avers was made on the ninth day of June, 1885.

The breach alleged is the neglect and failure to pay the money and convey the farm, by reason whereof defendant became liable to pay the contract price of the land, to wit, $3,000, together with the value of one-fourth of the hay and corn then growing, as well as the said sum of $1,500.

The second count sets forth an executory contract entered into the twenty-fifth day of May, 1885, in writing, averring that, in consideration of $4,500,—agreed to be paid as follows: $3,000 by conveying by a good and sufficient warranty deed to plaintiff of defendant's farm of 63 acres, together with one-fourth of the hay and corn then growing thereon, and to pay said plaintiff $1,500 in cash in addition thereto, and make such conveyance and pay said money as soon as an inventory of the stock could be completed,—he (the plaintiff) agreed to sell, convey, and deliver to defendant his stock of hardware, tinners' tools, and store fixtures, excepting and reserving from said stock whatever the same might inventory over and above the sum of $4,500, which excess over

67 MICH.—41.

and above $4,500 was to be taken from said stock by the plaintiff.

It avers that afterwards, in compliance with the agreement upon his part, an inventory of said stock of tinners' tools and store fixtures was taken by him (the plaintiff), with the assistance and assent of defendant, and was duly completed on, to wit, the ninth of June, 1885, and at which time plaintiff delivered to defendant the stock of hardware, tinners' tools, and store fixtures to the amount in value of $4,500, after deducting therefrom, by consent of defendant, whatever said stock inventoried over and above $4,500; and defendant then and there accepted such stock and tools and store fixtures, and took possession of the same.

It alleges, as a breach of the contract, that the defendant did not, nor would, at the time of said delivery, or at any time afterwards, pay to plaintiff said sum of $1,500, and convey said farm of sixty-three acres, but has voluntarily conveyed said farm to one Clinton Arnold, and thus put it out of his power to perform said contract on his part; by means whereof he has become liable to pay said plaintiff such a sum in cash as said farm was actually worth, to wit, $3,200, as well as $1,500 stipulated to be paid in said written agreement, and, in addition thereto, such sum as one-fourth of the hay and corn crop was reasonably worth, to wit, $500.

Under the testimony and charge of the court, the jury returned a verdict in favor of the plaintiff for $4,401.32.

The defendant claims that there was never any delivery and acceptance of the property bargained for; and that on account of fraud in the inventory made, and representations of the character of the stock, he had a right to and did rescind the contract. He also claims that, as there was never any delivery and acceptance of the goods, the plaintiff cannot recover upon the counts of his declaration, which are based on delivery and acceptance, and there is no count based upon a failure or refusal to accept.

The written contract entered into between the parties, and which the testimony shows Mr. Pierson procured to be draughted, was as follows:

"Know all men by these presents, that I, Newton Pierson, of Three Rivers, Michigan, of the first part, for and in consideration of the sum of four thousand and five hundred dollars, to be paid me as hereinafter expressed by James H. Spaulding, of St. Joseph, Michigan, party of the second part, have bargained and sold, and by these presents do grant and convey, to the said party of the second part, my stock of hardware, tinners' tools, and store fixtures, now in the store occupied by me in Three Rivers, Michigan; excepting and reserving from said stock whatever the same may inventory over and above the sum of four thousand and five hundred. The excess of said inventory over the sum of $4,500 the said Newton Pierson is to take from said stock in hardware, if the party of the second part so agrees.

"And the said party of the second part, in consideration of the premises, hath agreed to purchase said stock of hardware, tinners' tools, and store fixtures above mentioned of said first party, and agrees to pay for the same the sum of four thousand and five hundred dollars in manner following, that is to say: the sum of three thousand dollars by conveying to the first party his farm of sixty-three acres, situated and described as follows: South part of the east half of section twenty, in the township of Mottville, St. Joseph county, Michigan. Said land is now particularly known as the farm bought by the second party of the estate of Henry Hass. The balance of said purchase money, to wit, the sum of one thousand five hundred dollars, to be paid in cash. The conveyance of said land and payment of said money to be made as soon as the inventory of said stock can be completed.

"It is understood and agreed between the parties hereto that the first party is to have one-fourth of the hay and corn now on the ground on said land to be conveyed; the remainder of said crops being reserved by second party.

"The land to be conveyed by warranty deed to first party, free and clear from incumbrances.

"The said stock to be inventoried and delivered to the second party on the first day of June, 1885; and the deed of the land to be conveyed to the first party is to be executed and delivered to the first party, June 1, 1885, and balance of purchase money to be paid first party at the same time stock is delivered.

"In witness whereof the parties hereto have hereunto set their hands and seals, this twenty-fifth day of May, 1885.

"In presence of　　　　　NEWTON PIERSON,

"B. E. Andrews.　　　　JAMES H. SPAULDING."

It will be noticed that, while the contract contemplates that the inventory shall be made, it nowhere states by whom it shall be made. It also contemplates that an appraisal of the goods inventoried shall be made, but it does not state by whom, or upon what basis, such appraisal or valuation shall be made. The parties understood that there were over $4,500 worth of goods in the stock including the tinners' tools and fixtures; and the contract, in effect, is an agreement to sell $4,500 worth of stock out of the stock of hardware then in the store. The excess of the appraised value, as inventoried, Pierson was to take out of the stock of hardware, if Spaulding so agrees; but, if Spaulding does not so agree, what then? There is no agreement that Spaulding shall pay for such excess in money, or in any other way, and none that Pierson shall donate them to Spaulding without consideration. From the whole instrument, it appears that the intention of the parties was that Pierson should sell to Spaulding goods to the value of $4,500, and no more, for the consideration expressed in the contract, and that all surplus was excepted from the sale. We must regard the words, "if the party of the second part so agrees," as surplusage, in the proper construction of the contract.

Now, as bearing upon the question of delivery, it is apparent that the parties intended that three things should be done before a delivery could be made:

1. An inventory should be made of all the goods in the store, as well as of the tinners' tools and fixtures.

2. The goods so inventoried should be appraised or valued upon some agreed bas s.

3. After this was done, Pierson should take from said stock of hardware the excess in hardware, so that the property left should be of the value of $4,500.

When this was done, then delivery could be made, and the consideration to be paid by Spaulding was to be paid in the manner provided. The delivery of the property by plaintiff and the conveyance of the land and payment of $1,500 were to be simultaneous.

It will be readily seen that an important factor was omitted from the written contract; namely, by whom and, upon what basis the several items in the inventory were to be priced or valued.

This being a purchase of nearly the entire stock of goods, for the purpose of engaging in the sale of the same at retail, it is clear that the parties could not have intended that the purchase price should be the retail market value in that place, for it must be presumed that the purchaser was not buying merely for the sake of selling again at the same or less price, and that some margin of profit was contemplated in fixing upon the price as between these parties.

Oral testimony was introduced to supply this defect in the written contract, and consisted exclusively of statements of the parties to the suit.

The plaintiff testified as follows:

"After this contract was made, we commenced taking an inventory on the twenty-eighth day of the same month. It was understood that we should commence on the twenty-eighth, and James H. Spaulding was to be there on the twenty-eighth with his brother Albert, who was to come with and assist him in inventorying. They both came on the morning of the twenty-eighth. We went to work inventorying. In the first place, I gave each the cost-mark of the goods in the store, except the stoves, iron, and nails. All steel goods, furnaces, house and shelf goods, were marked with the cost-mark in characters which almost all merchants use. I gave the cost-mark on a piece of paper, and taught it to them, so that they could look at any article of goods, and compare the cost-mark with the list, and see if I was overcharging them or not.

We commenced inventorying, and worked two or three hours, but did not make much headway, as people kept coming into the store. I suggested whether we had not better

close up than to take the inventory in that sort of a way, and keep it closed until we should get through. James H. Spaulding rather objected to doing that, as he preferred to have the store kept open, on account of forming acquaintances, and not driving trade away. We kept on with the inventory until it was completed.

" We agreed, as a basis on which to make the inventory, that the goods purchased within a year—that is, goods that had not been in the store a great while—should be inventoried at what it cost to put them there. These were what you might term new goods. Goods that had been in the store quite a length of time, perhaps some of them rather old, I was to discount, and make the price less than they had cost. When we came to this class of goods, I called Mr. Spaulding's and his brother's attention to them, and I showed him how much I was discounting them, and there were not any goods that went onto the inventory of that kind that he offered any objection to the price during the whole inventory."

On cross-examination he further testified:

" After we had agreed upon the trade, I got my attorney to draw up the contract. I don't know why I did not have my attorney put into the contract the basis on which the inventory was to be taken. I did not think of it, I suppose. I told him to draw up a contract in accordance with the agreement we had made.

" There was a verbal agreement between defendant and myself as to how the inventory was to be taken, and I agreed to stay and assist him. The agreement between Mr. Spaulding and I, in regard to the inventory, was that the best stock was to be inventoried at what it cost within a year, at a reasonable time, and the balance of the stock was to be inventoried at what it was worth, as near as we could get at it. I had been in the hardware business about twenty-five years in Three Rivers."

The defendant testified that the agreement was that Pierson should put the stock of goods in the trade at a great deal better than present wholesale prices, and that he stated that there were not more than $150 to $200 worth of stale goods, and the rest were new; that the principal business of his life had been farming, and he knew nothing about the hard-

ware business; that, in a day or two after the contract was drawn, Mr. Pierson commenced to take the inventory; that he did not assist in making the inventory; that his brother was there part of the time, and assisted by setting goods back; that Pierson gave him his cost-mark, but he did not understand it; that an arrangement was made about selling goods while the inventory was being taken; that Pierson said he would keep the store open, and sell goods right along, and he would make a memorandum, and take it from the inventory after it was completed, and he took the money that was taken during the inventory; that the inventory was taken by Pierson, examining the goods, counting the articles, making a memorandum of them, and in the evening he would extend the items; that he did not consult witness about the manner of making it, the prices, or anything of that kind.   He went on in this way until the inventory was completed.

From the foregoing testimony, it appears that, by the tacit understanding of both parties, the plaintiff was to and did make out the inventory under the agreement.   The parties disagree as to the basis of valuation which he should place upon the articles inventoried.   The plaintiff testifies that defendant assented to the values or prices affixed to the several articles as they went along; the defendant testifies that he did not assent to the prices affixed, but reserved his approval until the inventory should be completed, and he had an opportunity of submitting it to some disinterested person acquainted with the business.

Upon the plaintiff's claim, he was called upon, under the circumstances, to exercise entire good faith towards defendant in the listing and valuation of the goods.

The testimony in support of the respective claims was left by the court to the jury, with proper instructions, as well as the claim of the defendant that he had been fraudulently imposed upon by the plaintiff in making the inventory.

Both parties agree that the inventory was not completed until the eleventh of June, and the plaintiff testifies that it footed up to $4,768; that he asked defendant if he could sell the surplus to him, and he said, "No; that he did not want it;" that witness then said, of course he would take it himself; and he made a memorandum of what he would take, and showed it to defendant that day, and took it out of the stock.

Plaintiff further testified that when he got the inventory completed, on the eleventh day of June, he showed it to defendant, and asked him to close up the trade; that he said he would like to have a hardware man come and look it over; that at first witness objected, but finally consented; and Mr. Spaulding got a Mr. Jones, a hardware man from Marcellus, to come and look over the stock. As a result of this examination, defendant refused to carry out the agreement, and plaintiff immediately commenced this suit by attachment upon the stock of goods, tools, and fixtures mentioned in the agreement.

The right of plaintiff to maintain his action depends upon whether the goods were delivered so as to pass the title of the property to defendant. A mere offer to deliver, without acceptance, would not pass the title to defendant. Both counts of plaintiff's declaration aver that defendant accepted the goods, and entered into and took possession of the same.

Several of the errors assigned relate to the admission of testimony, against defendant's objection, which plaintiff was permitted to introduce to prove delivery and acceptance.

Plaintiff claims that he delivered possession upon the evening of the eighth of June. He testified:

"We got the inventory completed on the evening of the eighth of June, and I had a conversation with the Spauldings that evening, and told them that I had the inventory completed; that is, I had all the goods on paper, and that, if I continued to run the store in my name, we would have to

keep an account of everything sold. That would be quite a little bother, and, if they saw fit, they could take the store in the morning, and run it themselves. They consulted together, and concluded to do so. They said they would take the store in the morning. They took possession of the store in the morning; James H. Spaulding did."

The objections to the testimony bearing upon the questions of delivery and acceptance will be considered with reference to the ninth of June, when plaintiff claims a delivery and acceptance to have taken place.

The plaintiff was permitted to introduce evidence showing that between the twenty-eighth of May and June 9, while the inventory was being made, the defendant waited upon customers, sold goods from the stock, said that he had purchased the stock, that there was a new firm of Spaulding Brothers; that on the third or fourth of June he gave an order to a traveling salesman for some wire fence, and had it billed to Spaulding & Brother; that he bought some goods of the Michigan Stove Company, and of Lockwood, Taylor & Co., of Cleveland, Ohio, on the third or fourth of June; that about the first of June he sold a stove to Mr. Andrews, and took a note for $10; that he sold some wire fence to another Mr. Andrews, who paid him for it,—and other like testimony.

Upon the plaintiff's theory and testimony that the goods were not delivered until the morning of the ninth of June, this testimony should have been excluded. All these transactions were had under the arrangement that the store should be kept open for trade, and in contemplation that a sale would be consummated in accordance with the written agreement. It had no bearing upon the actual fact whether there was a delivery and acceptance on the ninth of June. Its reception could not be otherwise than to have a damaging effect upon the jury. Its direct tendency was to confuse and mislead them.

The defendant denies that there was any delivery or accept-

ance at any time, and denies that he ever took possession of the goods. Indeed, it is difficult to reconcile the plaintiff's theory, that there was a delivery and acceptance on the ninth, with the terms of the written contract, which he does not claim was modified, which provides only for a sale of $4,500 worth of goods; the surplus being excepted and reserved from such sale, and which he was to select out from the stock of hardware before a delivery could be made.

He testified that the inventory was not complete, and the valuations extended, until the eleventh, when he could for the first time ascertain the extent of the surplus, and when he says he in fact did select out goods to the amount of such surplus. Manifestly, the title had not passed before this. If it had, it would have required a repurchase, instead of a selection of the articles not sold.

Pierson also testifies that on the evening of the eighth of June he told his tinner, who had one key of the store, and he (Pierson) had another, to hand his key to Spaulding; and the tinner testified that he offered the key to Spaulding the next morning, and Spaulding told him to keep it, and open up the store. This was in the store after it was opened.

Pierson testified that the safe was included in the sale to defendant; that he did not instruct Spaulding in the combination; that he continued to use the safe himself, and the store, under an agreement with Spaulding, and held one key of the store, until the commencement of this suit, when the sheriff attached, when both keys of the store were delivered to the sheriff.

In view of the terms of the written contract, which were not mod.fied or claimed to have been, it appears to me that, if any possession was given on the ninth of June, it was a qualified possession, simply for convenience, subject to the completion of the contract, and in expectation that it would be consummated in good faith by the parties, and, when the

surplus was ascertained, the selection would be made by plaintiff, and then delivery would be made in accordance with the terms of the written agreement.

But this was not the theory of the plaintiff's claim, which was that the delivery and acceptance were consummated on the ninth day of June, so that the title to the goods passed to defendant at that time.

If the sale had been of the entire stock, so that nothing remained to be done to identify the goods sold from those not sold, there might have been a delivery before the completion of the inventory by the agreement of the parties, and actually carried into effect; or if there was a conditional delivery in this case, and actual possession given of the entire stock, subject to the completion of the inventory, the ascertainment of the excess of value over $4,500, and the selection of goods to the amount of such excess, then, upon completion of the inventory, and the selection and removal of the goods equal to the excess, the delivery would be complete, and acceptance would be presumed, if the defendant continued to hold or retain possession after such selection and removal, unless he had been defrauded by the plaintiff in the transaction, and such fraud had not yet been discovered by him.

There was testimony introduced which tended to prove this last hypothesis; but the cause was not submitted to the jury upon this theory, but upon the theory of an absolute delivery and acceptance on the ninth of June, which, under the contract, it was impossible to make at that time.

The testimony as to what was done by the parties after the eighth of June, tending to show that defendant had possession, was admissible to prove a qualified delivery, and which might be construed into an acceptance if retained after plaintiff had made his selection, and removed his goods from the stock.

It is not necessary to pass upon the exceptions to the charge of the court, nor to point out some errors which we discover therein, as upon another trial they will not be likely to recur.

The judgment is reversed, and a new trial awarded.

SHERWOOD and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.