JUDSON J. DIKEMAN AND ORVILLE DOUGHERTY v. OTIS ARNOLD

[See 71 Mich. 656.]

*Deed—Delivery—Acceptance—Evidence—Contract for sale of land—
Execution by wife—Measure of damages—Presumption
of official correctness.*

1. Where the fact that negotiations were pending for an exchange of land is not disputed, but the contention of the defendant, who is sued for refusing to execute a deed of his land, is that the delivery of a deed which the plaintiffs claim was made absolutely pursuant to such negotiations, at a meeting of the parties at a given date, was conditional upon the approval by defendant's attorney of the abstract of title to said land to be by him thereafter examined, what had taken place before said meeting of the parties is immaterial and irrelevant upon the issue of such delivery, unless the defendant can be shown to have said or done something before going to the place of meeting indicating an intention to accept said deed without such investigation of title.

2. The testimony of a conveyancer who acted for *all* of the parties in preparing deeds and other papers on a proposed exchange of land, as to what transpired while the papers were being drafted, is not privileged by reason of his being also the attorney for one of said parties.

3. A grantee may waive his right to the evidences of a good title, and rely upon his own knowledge, and the covenants of warranty in his deed, but is not obliged to do so.

4. The adverse possession of land by a patentee and those claiming under him for fifty years renders evidence of the non-record of the patent irrelevant in a suit involving the title to the land.

5. Where a grantee accepts a deed without its being executed by the wife of the grantor, upon her agreement to afterwards execute it, which she does, he cannot be heard to say that the deed was never delivered to or accepted by him because of his refusal to again receive it after such execution by the wife, whose only interest in the land is an *inchoate* right of dower.

6. Where under an agreement for an exchange of land one party executes and delivers the requisite deed, and the agreement as to a conveyance by the other party is void, and he refuses to perform it, such refusal has the effect to rescind the contract and raise an implied promise to pay for what he has received upon it. *Nugent v. Teachout*, 67 Mich. 571.

7. A contract for the sale of land, a part of which is occupied as a homestead, which contract is not signed by the wife, is only void as to the homestead, and an action lies for damages against the husband for refusing to convey the remainder of the land pursuant to the contract.

8. A certificate of acknowledgment carries with it the presumption that the officer making it has certified to the truth, and the party attacking it has the burden of proof to show its falsity.

Error to St. Joseph. (Loveridge, J.) Argued October 30, 1889. Decided December 28, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion and in the former report of the case.

*O. F. Bean* and *Howard & Roos*, for appellant.

*Howell, Carr & Barnard* and *Dallas Boudeman*, for plaintiffs.

[The points of counsel are stated in the opinion and in the former report of the case.—REPORTER.]

MORSE, J. This is the second appearance of this case in this Court. The facts and the matters in controversy were quite fully stated in the opinion of Mr. Justice CHAMPLIN when the case was here before, see 71 Mich. 656 (40 N. W. Rep. 42), and will not here be referred to

again, except in so far as it shall be found necessary to a proper understanding of the questions here discussed.

Upon the second trial in the court below, the plaintiffs recovered judgment for $8,900.67. A motion for a new trial was made, and upon such motion it was ordered that, unless plaintiffs consented to a deduction of $799.30 from the amount of said judgment, a new trial would be granted; but, if such deduction was made, the motion would stand as denied. The deduction was made. Thereupon the defendant came to this Court upon writ of error.

The first main objection raised here to the proceedings on the trial is in relation to the admission of evidence of the talks and negotiations between the parties to the suit, and also between Shaw and the plaintiffs, prior to June 16, 1887, the day plaintiffs claim the deeds were executed and delivered, and to the instruction of the court to the jury that—

"All the talks, negotiations, and contract, made prior to the time when this deed [from plaintiffs to Arnold] is alleged to have been delivered and accepted, are wholly immaterial, except as they bear upon the question of such delivery and acceptance."

Among the items of evidence thus objected to are—

1. The conversations in detail between plaintiffs and defendant at various times prior to said June 16.

2. Testimony showing that the defendant was building an addition to his barn on his homestead, and gave directions to his help to stop work until the question of the trade was determined.

3. That he drew out manure between June 11 and 16, and that he put it on lands other than that which he talked of trading.

4. The introduction of the contract of June 11, which was shown to have been abandoned on the night of June 15.

This class of testimony is claimed to be clearly inadmissible to show delivery of the deed on the 16th, or

afterwards, under the holding of this Court in *Pierson v. Spaulding,* 67 Mich. 640, 649 (35 N. W. Rep. 699).

The main question of fact to be determined by the jury was the delivery of the deed by Dikeman and Dougherty to Arnold, and his acceptance of it. If this was not found, the case was ended in favor of defendant. This question of delivery depended mainly upon what transpired on June 16. This was the central transaction, and the question arises, what bearing, if any, did the transactions before that time have upon the fact whether or not the deed was delivered and accepted on that day? It appears from Mr. Arnold's testimony that he agreed to the contract of June 11, as made by his son George, and that he went to town upon the 16th to make this trade, and that he there entered into the contract made upon that day; but his contention is that none of the papers passed that day, or were to pass; that it was understood and agreed that he should be satisfied with the title of the Shaw farm before the trade should be completed; that the deeds and all the other papers were to remain in the hands of Barnard, the attorney who drew them, and undelivered, until he could see Mr. Bean, his attorney, and have him look over the abstract of the title to the Shaw farm; that he took an abstract furnished by plaintiffs over to Bean's office on the 16th; that Bean was going to a funeral, and did not have time to fully examine the abstract, but told Arnold that it was not a full abstract, and he wanted to examine the will under which Mrs. Shaw claimed title, and could not attend to it that day; that the papers better not be exchanged that day; and Arnold replied that the papers were not to pass that day. In the view of the theories of both parties, testimony that Arnold stopped work on his barn before June 16, and while the negotiations were going on, and that he drew out manure on other lands than those

involved in this trade, was immaterial and irrelevant for any purpose, as the same could have no bearing upon any legitimate issue between the parties; and, if used, as it might have been under the charge of the court, to show, or as tending to show, a delivery of the deed and a consummation of the trade on June 16, or at any time thereafter, its admission was error. And while it was proper, and perhaps necessary, to show some of the prior negotiations between the parties from the beginning as a part of the history of the transaction, and to give the court and jury a proper understanding of what was in issue, many of the talks and acts of the parties, put in testimony in detail, had nothing to do whatever with any question in the case. If any of the testimony so given had been in conflict with the final contract as made on June 16, it would not have been permitted to have any bearing or weight against the contract; and, if it were all in harmony with such contract, it could be of little use, except to show the steps leading to the transaction on the 16th. I fail to discover what bearing, if any, these talks and negotiations had, or could have had, upon the question of the delivery and acceptance of the deed by the defendant on June 16. It is not claimed by plaintiffs that any contract was completed until that day, except the contract of June 11, which was altered and modified by the arrangement claimed to have been made on the 16th.

We think that all the talks and negotiations of the parties prior to June 16, and the acts of the defendant, or any of the parties, before that time, were inadmissible, as bearing upon the question of delivery of the deed and acceptance of the same on that day, excepting the talk plaintiffs claim to have had with Arnold on the night of June 15 at his home in relation to the consummation of

the trade on the following day.  The case of *Pierson v. Spaulding*, 67 Mich. 649, is in point.

To claim that, because Arnold authorized his son George to enter into the contract of June 11, or ratified it after it was made, and because Arnold was willing to trade in some way, and said or did things looking towards a trade before June 16, the jury were to infer a probability that he accepted the deed of the Shaw farm upon an abstract admittedly showing an imperfect title, and closed the trade that day, would be erroneous, and one not to be permitted by the law.  If Arnold had disputed the making of the contract of June 11, or that he ever had any idea of making this trade, or any trade, before the 16th, then these facts and acts and talks would properly have been admissible to disprove Arnold's claim.  But when the theory of both parties was that a trade was being negotiated, and that they went to the office of Barnard on the 16th to close it up, and the only dispute of any importance between the parties as to what happened there was in relation to the delivery and acceptance of the deed,—the plaintiffs claiming that Arnold waived the apparent defect in the Shaw title, and accepted the deed personally, knowing that the title was good, and the defendant claiming that he did not accept such deed, and was not to accept it until his attorney had examined the title, and found it to be good,—what had taken place before that time became entirely immaterial and irrelevant upon the issue of such delivery, unless Arnold could be shown to have said or done something indicating an intention, before going there on the 16th, to take a deed of the Shaw farm without consulting his attorney or investigating the title; and we find no evidence in the case showing such an intention previous to the transactions on the 16th.  Consequently, the court erred in his

instructions in this respect, and should have charged them directly to the contrary, to wit, that the talks, negotiations, and acts of the parties previous to the 16th had no bearing whatever upon the question of the delivery and acceptance of the deed upon that day.

We think the plaintiffs were entitled to show all that took place between any of the parties in Barnard's office on June 16 in the presence and hearing of the defendant. The plaintiffs, also, were entitled to prove all that took place after the 10th between themselves and Arnold, or any act or acts of Arnold having a tendency to show that he accepted the deed on that day. It was proper to show that Dougherty moved a load of goods to Arnold's place on the 18th of June, and that Arnold would not let him unload them, and we fail to discover how this testimony could have injured the defendant. If Dougherty's moving his goods had a tendency to show that he supposed the trade was completed on the 16th, then the conduct of Arnold in refusing to let him unload them also tended to show that Arnold did not suppose the trade had yet been made, and the question in issue was Arnold's intention to accept the deed, and whether he did accept it on the 16th, and not what Dougherty supposed was done on that day.

What Arnold said and did on the 17th was admissible, as bearing upon his understanding of what had taken place the day before, under the instructions of the circuit judge, who charged the jury that, if they found that Arnold's conversations and negotiations upon that day (17th) were entered into for the purpose, and with the intention, of making a settlement or compromise of the matter in difference between him and plaintiffs, then they should give no weight to the testimony. If they found otherwise, then they might give it such weight and consideration as they should deem it entitled to.

It was not proper to permit Mrs. Shaw, on cross-examination, to testify to what Mrs. Arnold said and did at Shaw's house on June 18.

It was proper for the defendant's counsel to ask Mr. Arnold if he accepted any deed or papers there on the 16th; but as he did in fact testify several times that he did not accept the deed, or intend to do so, the error in refusing the question was harmless.

Mr. Barnard's testimony, and that of his brother, were admissible. They were acting as conveyancers, and if they were, as claimed by defendant's counsel, the attorneys of plaintiffs, they sustained no relation to defendant which rendered the acts and words of Arnold inadmissible through their lips. They were as competent witnesses to what transpired there, while the papers were being drafted, as were any of the other persons present, and in testifying they violated no confidence placed in them by Arnold or any one else.

We do not think there is any evidence to show, as claimed by defendant's counsel, that the contract of June 11 was abandoned. It was modified by the subsequent agreement that more buildings should be reserved, and that $5,000 of the purchase price of the Shaw farm should be paid by the execution by Arnold of the mortgage to Richard Dougherty. The contracts of June 11 and June 16, with the agreement as to the mortgage to Dougherty, must be taken together as showing the complete contract between the parties as to the terms of the trade. No one of the agreements shows the whole bargain as finally attempted to be consummated.

The title to the Shaw farm was brought in issue on the last trial, and testimony was introduced by both parties as to the condition of such title on June 16. The land was willed by Garrett Sickles, the father of Mrs. Shaw, to her mother, now Mrs. Stebbins, during

her natural life, and at her death it was to go in fee to Mrs. Shaw. A quitclaim deed was introduced by plaintiffs from Mrs. Stebbins to Mrs. Shaw, dated August 26, 1878, but it was claimed by defendant that this deed did not cover the entire farm, which claim upon the face of the deed must be conceded to be correct. It was shown, however, that at the time of making the deed the possession of the entire farm was surrendered by Mrs. Stebbins under this deed to Mrs. Shaw, who had ever since held and occupied the whole farm as her own; and it was claimed that the intention of Mrs. Stebbins was to deed the whole, of which fact Arnold had knowledge. Mrs. Stebbins was sworn as a witness for plaintiffs, and against objection testified that before she made the deed she rented the farm to Mr. Shaw, but that since then she had received no rent. She further stated that she had no right to claim any rent, as she deeded the whole place away, if Mr. Bean, who drew the deed, did the business right. This last statement the court struck out. But defendant's counsel claim that none of this evidence was proper, and that Mr. Boudeman was allowed to use it on the argument in an improper way. Mr. Boudeman, in summing up to the jury, said:

"What is there possibly wrong about the titles? The only possible wrong there could have been was in this ten-rod strip that we have been talking about. They had a warranty deed from us; if the title was not good we could make it so; and yet they say there is a ten-rod strip of about seven acres of which the title is imperfect in this way: that there is still apparently a life-estate of Mrs. Stebbins. He knew that Mrs. Stebbins left the place and conveyed her interest over to Mrs. Shaw years ago, and he had lived right beside the Shaws."

*Mr. Howard:* "Do you claim there is any evidence on that?"

*Mr. Boudeman:* "I do claim there is evidence, and he could not have lived beside them without knowing it."

*Mr. Howard:* "We object to the statement of the

counsel, for the reason that there is no evidence to that effect." (Overruled, and exception taken.)

· *Mr. Boudeman:* "I claim there is evidence in the case that he knew she conveyed her interest. He knew it from her testimony in the case. He knew that the parties lived on the place, and occupied it, and that Mrs. Stebbins had made no claim to it since she left there. Mrs. Stebbins was on the stand, and did she claim it? Had she made any claim before? Oh, no."

It is also contended by defendant's counsel that there was not a particle of evidence in the case tending to show that Arnold knew that Mrs. Stebbins had left the place, or knew that the title was good, or that he had any reason to know it. The court instructed the jury, in relation to this part of the case, that the face of Mrs. Stebbins' deed did not purport to cover all of the Shaw farm, the effect of which was to leave in Mrs. Stebbins a life-estate to that part of the land not described in such deed, and continued:

"No doubt, gentlemen, but that the defendant, Arnold, had a right to a good marketable title to the Shaw farm, which the plaintiffs were undertaking to convey to him. He could, however, have waived his right to the evidences of a good title. The question for you to determine is whether he did. The deed made out to the defendant by plaintiffs was a warranty deed, containing covenants to the effect that the title to the lands described in it was good, perfect, and indefeasible, and that the lands conveyed were free from all incumbrance. It was competent for the defendant to accept the abstract of the title in the condition in which it was at the time the papers were drawn, and to rely upon the covenants of the deed in question, but he was not bound to do so. * * * The question is not, therefore, whether it appears from the evidence given upon the trial that the title to the farm is in fact good or not good, but how it appeared to the defendant at that time, upon the evidence which he then had before him to act upon, and the knowledge he then had upon that subject, as bearing upon the delivery and acceptance of the deed. The theory of the plaintiffs is that he then knew that the

title was good, and had good reason to know it, and that he acted upon the knowledge, and accepted of the deed."

No fault can be found with the charge of the court in this respect, if there was any testimony in the case tending to show that Arnold knew that Mrs. Stebbins laid no claim to the farm, and did not intend to do so. The theory of the defendant was that there was to be no delivery of the deed until the abstract was brought down to date, and his attorney, Mr. Bean, could examine the papers, and determine whether the title was good or not. The theory of the plaintiffs was that defendant did not insist that the abstract should be brought down to date, or that Mr. Bean should look it or the papers over, before any delivery took place, but that defendant acted as to the acceptance of the deed upon his own knowledge and information concerning the ownership and occupancy of the Shaw farm, and from that knowledge and information he was satisfied with the title, and believed that Mrs. Shaw was the owner, and relied upon the covenants of warranty in his deed for his protection. Under these theories it was proper to show that Mrs. Stebbins had not lived upon the place, or exacted any rent from the Shaws, or made any claim to any part of the premises, since she executed the quitclaim deed to Mrs. Shaw, and to show that Mr. Arnold was aware of the facts by any competent testimony. The fact that Arnold was a near neighbor to the Shaws, and intimate with them, was a competent fact tending to show such knowledge. It would be of little, if any, weight against his positive denial of such knowledge, but it was competent to go to the jury as a circumstance tending to show knowledge when the plaintiffs made their case. Mr. Boudeman was not justified in claiming such knowledge,.

based on the fact that Arnold had heard Mrs. Stebbins' testimony in the case; but otherwise we do not think he went out of the legal path in his remarks above quoted, and which are complained of. We think there was evidence in the case tending to show that Arnold had knowledge that Mrs. Stebbins claimed no interest in the Shaw farm after she quitclaimed to Mrs. Shaw.

The objection to the cross-examination of the witness Thomas G. Green is not tenable. The defendant put this witness, who made the abstract, on the stand to prove that there was no record of any patent from the United States to Garrett Sickles, under whose will Mrs. Shaw claimed title to the Shaw farm. We can see no relevancy to this testimony, because it clearly appears that the occupancy of the land by Sickles and his grantees had been uninterrupted for 50 years, and Arnold had found no fault with the title in this respect until this witness was sworn; but it was competent, after the admission of such testimony, to show by this same witness why he made the abstract showing title from the government to Sickles, and where he obtained his information of such title.

It was competent for the defendant to accept the deed without its execution by Mrs. Dougherty, upon the understanding and agreement that she should afterwards execute it, and, if he so accepted it, and she afterwards executed it, he cannot be heard to say that it was never delivered to or accepted by him, because he refused to again receive it after such execution. The whole evidence shows that the only interest she acquired in the Shaw farm by this trade was an inchoate right of dower. It was not acquired by her and her husband with any intention of making any part of it a homestead.

The defendant requested the court to instruct the jury

that this suit was to recover the purchase price of the land, and not for damages for not deeding, and that the fact that Arnold had made the written contract and refused to carry it out would not sustain this action. This was not given as requested, but the counsel for plaintiffs contend that the substance and intent of it was embraced in the general charge of the court. We think the court committed no error in this regard. He fairly put the issue to the jury upon the question whether or not the plaintiffs' deed was delivered to and accepted by the defendant on the 16th of June. If the jury found that it was not accepted, the case was ended, and the contract cut no figure in it. If they found the deed was accepted, then the fact that Arnold had made this contract and refused to carry it out was material and important in the case. Then, under the rule of damages laid down by the court, and sanctioned by this Court when the case was here before, the contract specified the purchase price to be paid in part for said deed, to wit, so much land at $5,700, and so much other land at $100 per acre as would be sufficient, with the $5,700 and the $5,000 mortgage to Richard Dougherty, to make up the whole purchase price of the Shaw farm, to wit, $13,000.

Under the facts, so found by the jury, when Arnold refused to deed the land, or any of it, he had paid but $5,000 towards the land, and that by giving the mortgage to Dougherty, leaving $8,000 unpaid on the Shaw farm, which he had agreed to pay in a certain specified amount of land. This leads us to the question of damages, which we may as well examine here.

When this case was first commenced in the circuit, it was planted upon the idea that the plaintiffs were entitled to recover the amount of the purchase price of the Shaw farm, $13,000, less the Dougherty mortgage, $5,000, to wit, $8,000, with interest from June 16, 1887. A trial

was entered upon on that theory. Objection was made by defendant's counsel that this was not the proper measure of damages, claiming that it should be the value of the land which Arnold agreed to but did not convey. The circuit judge ruled with the defendant, and under such ruling the plaintiffs' theory of damages was changed to conform to it. It is now strenuously insisted that the plaintiffs cannot recover in this action, as now entered as to damages, because the contracts of the 11th and 16th of June are absolutely void, for the reason that part of the premises mentioned in said contracts is the homestead, and that the same could not be deeded or contracted away without the signature of Mrs. Arnold. Before we enter upon the discussion of this claim, it may be proper to remark that, if it is correct, then suit was properly planted as to damages in the first place. If the deed to the Shaw farm was accepted by Arnold, and the the title passed to him, then, if this contract was absolutely void, as far as the agreement to convey the Arnold land was concerned, the case would stand within the authority of *Nugent v. Teachout,* 67 Mich. 571, 576 (35 N. W. Rep. 254). The defendant would have received and accepted the deed of the Shaw farm under a promise to pay $13,000 for it. In equity and good conscience he would owe the plaintiffs the balance of the consideration of the price or value of the land in money. His refusal to convey would have the effect to rescind the contract, and raise an implied promise to pay for what he had received upon it. In such case the damages would in all probability equal, if not exceed, the damages recovered in this suit, as they now stand; and, considering that the defendant is responsible for the present theory of damages, we should not reverse the case, even if his present position were found to be correct.

But we have once, on the authority of *Pierson v. Spauld-*

*ing,* 61 Mich. 90 (27 N. W. Rep. 865), approved the rule of damages laid down by the trial court in this case. That case differs from the present perhaps in two respects: *First,* the contract in that case was conceded to be a valid one; and, *second,* the contract did not indicate that the inventory of the goods, which were to be paid for in part by the land, or the land, were priced in the contract at their cash value; while here it may be said that the contract was invalid, and the land to be conveyed by Arnold was priced in the contract at its cash value, the 25 acres at $5,700, and the balance at $100 per acre. But the contracts are somewhat alike in another respect. In one case there was to be deducted from the land three-fourths of the growing crops thereon, and in the other certain buildings were reserved, and to be removed to the Shaw farm at the expense of the plaintiffs.

But the contract was not void as far as the land was concerned not embraced within the homestead; and, if he had deeded in conformity with it, such deed would have conveyed his title to the excess over and above the homestead. *Stevenson v. Jackson,* 40 Mich. 702; *Dye v. Mann,* 10 Id. 291; *Wallace v. Harris,* 32 Id. 380; *Shoemaker v. Collins,* 49 Id. 595, 597 (14 N. W. Rep. 559). In *Phillips v. Stauch,* 20 Id. 369, where a specific performance was denied in a case where a portion of the premises was a homestead, and the wife did not join in the bond for a deed given by the husband, the bill was dismissed without prejudice to any proceeding at law which the complainant might "be advised to institute upon the bond for a deed mentioned in the pleadings." See pages 381, 384. This, in view of the reasoning of the opinion in the case, is an intimation that the complainant could sue upon the bond at law for damages.

We think the contract was good between Arnold and the plaintiffs. He knew when he made it that he could

not perform it without the signature of his wife to the deed. He, in effect, bound himself to procure such signature. It in nowise differs in this respect from a contract to sell lands which one does not own at the time he makes such contract. The fact that one did not have the legal title at the time he made the contract, and could not procure it afterwards, has never been recognized as a legal defense to an action for breach of the contract. The rule of damages was the proper one under the declaration in this case, and the theory of the plaintiffs. If the theory of the defense was correct, that the deed was never delivered or accepted, then in this action there could be no damages recovered. This was submitted to the jury, and they found against defendant's theory.

It is assigned as error that the court gave undue prominence in his charge to the testimony of Newton H. Barnard in stating to the jury that the certificate of the acknowledgment of the mortgage from Arnold to Dougherty was not to be lightly overturned by interested witnesses. Arnold denied that he ever acknowledged the mortgage, and there was some other testimony, and some things about the acknowledgment itself, that tended to corroborate his denial. Barnard and other witnesses testified that he did acknowledge it. Barnard was the notary who signed the certificate of acknowledgment. The rule undoubtedly is that the burden of proof rests upon the person denying the acknowledgment to show the falsity of the certificate, which carries with it the usual presumption that the officer making it has certified to the truth, and has not been guilty of wrongful or criminal action. See *Hourtienne v. Schnoor,* 33 Mich. 274; *Johnson v. Van Velsor,* 43 Id. 219 (5 N. W. Rep. 265), and cases there cited.

It is not claimed that Mr. Barnard was a party to any

fraud in this respect, as we understand from the record, briefs, and oral arguments in this case; but it is contended that he was the attorney of the plaintiffs then as he is now, and also a witness in their behalf, and that this instruction gave too much weight to his testimony, which was given in favor of the truth of the certificate as he made it. This, in our opinion, would not alter the presumption in favor of the certificate. It would have been proper for the court to have charged the jury that the burden of proof was on Arnold to show that he did not acknowledge the mortgage, and we think this would have been better under the circumstances than the language used by the circuit judge, although we are not prepared to say that his charge as given was erroneous.

It is also insisted that the court erred in the measure of damages in that he instructed the jury, if they found for plaintiffs, the damages would be the fair market value of the land, with interest, without stating to them that they should deduct therefrom the value of the buildings reserved, and the cost of moving them to the Shaw farm, and that the damages were, under such charge, made up from the value of the land with the buildings reserved upon it. This last claim is denied by plaintiffs' counsel, who insist that the damages, as found, did not include the value of the buildings.

As the case must go back for a new trial, this matter need not be further examined. The court should, however, upon the new trial clearly inform the jury that the value of the reserved buildings must not be included in the valuation of the land in estimating the damages, and that the cost of moving such buildings from the Arnold to the Shaw farm must be deducted from the value of the land.

We have now examined all the assignments of error

argued by defendant's counsel in their briefs, except one
or two, which do not merit discussion.

The judgment must be reversed, and a new trial granted,
with costs of this Court to defendant.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., con-
curred.    LONG, J., did not sit.