## DROPPERS *v.* MARSHALL.

1. HOMESTEADS—CONTRACT TO CONVEY—VALIDITY—LAND CONTRACTS
—VENDOR AND PURCHASER—DEFAULT.

> A contract to convey a farm consisting in part of the home-stead, signed by the husband alone, is binding upon him; and his default in failing to perform may be made the basis of an action for damages.[1]  OSTRANDER, C. J., and MOORE, J., dissenting.

2. VENDOR AND PURCHASER—BREACH OF CONTRACT—MEASURE OF DAMAGES.

> In an action for damages for the breach of a contract to convey land, the plaintiff is entitled to recover the difference between the price fixed by the contract and the market value thereof.

3. VARIANCE—TRIAL—PLEADING—INSTRUCTIONS.

> Where the case was submitted to the jury upon a theory wholly at variance with the theory of the declaration, the judgment of the court below will be reversed.

Error to Kent; McDonald, J.  Submitted June 18, 1918.  (Docket No. 46.)  Decided September 27, 1918.

Assumpsit by Anthony C. Droppers against Ernest W. Marshall for breach of a land contract.  Judgment for plaintiff.  Defendant brings error.  Reversed.

*Hatch, McAllister & Raymond,* for appellant.

*Herman & Johnson,* for appellee.

OSTRANDER, C. J. (*dissenting*).  The defendant owned 119 acres of land.  Under date December 5, 1916, he and plaintiff executed a writing, by the terms of which he was to sell and plaintiff to buy the land and some personal property for $16,000, upon certain terms.  The terms of payment were $500 December 5, 1916, and this was paid; $500 on or before March 1,

---

[1] See note in 8 L. R. A. (N. S.) 748.

1917, when a note and mortgage for the balance was to be given, to draw interest at the rate of 5 per cent. per annum, to be paid, $100, plus interest, annually, with the privilege of paying more than $100. The land is described in the writing as being in the township of Byron, Kent county, Michigan, and consisting of the east half of southeast quarter and southeast quarter of northeast quarter, less one acre. No section is given in the contract, and none is mentioned in the briefs, but in the testimony it appears that the land is on section 8. The three forties abut upon a highway, the middle forty acres is a homestead occupied as such by defendant and his wife. The wife did not sign the writing. Defendant refused to perform. In his testimony he assigns as a reason that by the terms of the contract the payments might continue for 150 years and that he asked the vendee, who refused to do so, to amend the contract in this respect. Plaintiff sued to recover his damages, declaring upon the contract and setting up the breach by defendant. With the plea defendant gave notice that at the time the contract was executed he was a married man, living with his wife on the land, that the land includes his homestead, and that he would insist that the contract is void because not executed by his wife. The cause coming on to be heard, the attorney for the plaintiff made an opening statement to the jury in which no intimation is given of a theory of recovery other than that the contract as made has been breached by defendant and that damages were claimed for the difference between the value of the farm and the contract price.

The theory of plaintiff, according to which he was permitted to recover, is, that in negotiations which preceded the making of the writing defendant valued each forty acres, the middle forty—the homestead— at about $10,000, the others, together with the personal property, at $7,000, and that, assuming the con-

tract to be void as to the homestead, it was valid as to the remainder and he could recover so much as the property other than the homestead was worth over and above the price so put upon it by defendant. Over objection and exception, he introduced testimony upon this theory, his precise testimony on this point being, "He valued the buildings between $6,000 and $7,000," the forty the buildings were on "about $3,-000," "with the personal property and the woods on the other 40's, he valued that at $7,000." He testified further:

"*A.* We talked about buying the entire 120 first, that is what he wanted to sell, and then I would rather only have 80 acres, and I asked him 'what will you take for the 80 acres with the buildings on?' 'Well,' he says, 'I don't care about selling 80 acres.' He says, 'I want $10,000 for the 40 with the buildings on.'

"*Q.* What did you say to that?

"*A.* I says, 'that is all right.' I says, 'that 40 is worth $10,000 with the buildings on, but,' I says, '$6,000 for the other two 40's is almost too much.' I says, 'I will have to go home and think that over again.' That was on Saturday.

"*Q.* And when did you have your next conversation?

"*A.* That was on the next Tuesday when we went to draw up the contract.

"*Q.* And what was said then?

"*A.* Then we talked it over again and I said 'the 40 with the building suited, for $10,000, suited me all right.' * * *

"*Q.* What was said about the personal property?

"*A.* Well, we dickered around for awhile. He had a young team of horses there and I wanted him to put in a young team of horses with the other two 40's, and finally we dickered around and I got the two other horses, the roan and the bay mare. That was the team mentioned in the contract; and the rest of the personal property mentioned in the contract.

"*Q.* And what did you say when he offered to put those things in that are mentioned in the contract?

"*A.* I says, 'if you figure that then for $10,000 and the other two 40's for $6,000, including the personal property, we will call it a bargain.

"*Q.* And did he agree to that?

"*A.* He agreed to that.

"*Q.* Then did you go down to have the papers drawn?

"*A.* Then we talked some about the terms, and—

\*   \*   \*

"*Q.* Well, as I understand then, when that proposition was made for $10,000 for the 40 with the buildings on and $6,000 for the others, including the personal property, did you say you would do that?

"*A.* Yes.

"*Q.* Did he say he would do that?

"*A.* Yes. Then we went down and had the contract drawn."

Defendant denies putting a value upon separate parcels or any agreement to that effect. He asked $16,000 for the farm and, to make the deal, included the personal property described in the contract.

Upon this point, which involves the principal issue in the case, the court instructed the jury:

"The written instrument is silent as to the contract price of the separate 40's, so you must determine the contract price from the oral testimony of the witnesses. As to this question, the plaintiff says that the contract price was $6,000 for the two 40's. That is, the plaintiff says that before they entered into the written contract they had agreed that the price of the two 40's was to be $6,000; the price of the homestead was to be $10,000. The defendant says that there was no agreement as to the contract price except the price mentioned in the written contract, that is, in the written contract, the price mentioned in the written contract for the farm as a whole, $16,000; says that independent of that amount fixed in the contract, there was nothing said between him and the plaintiff as to what the 40's separately were worth at that time.

"Now, under the circumstances of this case, the

plaintiff cannot recover any damages other than that represented by the tender which has been made into court until he has convinced you by a fair preponderance of the evidence that a price was agreed upon for the two 40's separate from the other 40, that is, from the homestead 40; I mean that a price was agreed upon before the written instrument was signed by the parties.

"It is a general rule of law that a written instrument cannot be—that oral testimony cannot be received to vary or alter or contradict the terms of a written instrument. That is based upon the presumption that when the agreement between the parties is reduced to writing, it contains all the agreement. But I have permitted the plaintiff in this case to explain what the consideration mentioned in the written instrument was, how it was made up. If you find that the testimony that was given in that regard is not true, your verdict—he would not be entitled to any damages, and your verdict would be only for the amount which has been tendered into court, or if you find that there was no agreement separate from the written agreement as to the contract price of these two 40's, the plaintiff cannot recover. If you find that there was such an agreement, still the plaintiff cannot recover unless it appears that the real value of the two 40's was more than the contract price; that the real value of the two 40's was more than the contract price. If you find that there was a contract price and the real value was more than the contract price, the plaintiff would be entitled to the difference between the contract price and the real value; that is the measure of his damages."

The verdict returned was $1,260, which included $510, the tender made into court by defendant of the $500 paid to him on the purchase price, plus $10, and $750 damages. There was a motion for a judgment *non obstante* for $510, with costs to defendant, and, if this was refused, a motion for a new trial. These were denied, and a judgment was entered on the verdict.

Appellant has stated and argued the following propositions:

"1. Was not the written contract, which the parties had deliberately made controlling as to the terms of their agreement, and being entire and not severable, did not the fact that it embraced defendant's homestead and was not signed by his wife render it void so that it will not support an action for damages even as to the excess of land over and above the homestead?

"2. Was it competent, under the pleadings and the opening statement of plaintiff's counsel, for the circuit judge to allow a recovery upon a verbal agreement for the price of the two 40's outside of the homestead?

"3. All question of competency under the pleadings aside, was it competent for the circuit judge to submit to the jury the question of whether or not there was a verbal agreement for the price of the two 40's outside of the homestead?

"4. Could the contract for the sale of the land in question rest partly in parol?

"5. Was not the consideration for the written contract contractual and so was not evidence of a parol agreement as to the price of the two 40's outside of the homestead incompetent, for the reason that such evidence would add to and vary the terms of the written contract?"

Appellee says these propositions evade the real issues, which are:

"1. If a contract for the sale of certain lands includes the homestead and is not signed by the vendor's wife, can it be made the basis of an action for damages by vendee, and if so, what is the measure of damages?

"2. Where the lands covered by contract of sale consist substantially of three 40's, the center 40 comprising the homestead, and are described in the contract as the east one-half ($\frac{1}{2}$) of the southeast one-quarter ($\frac{1}{4}$) and the southeast one-quarter ($\frac{1}{4}$) of the northeast one-quarter ($\frac{1}{4}$), etc., and the consideration is expressed in a single or lump sum, can parol

evidence be introduced to explain the consideration, that is, how it is made up?

"3. In the case at bar, could the above question be presented under pleadings and opening statement of counsel for plaintiff?"

From the manner in which the case was presented in the trial court and is presented here, some pains must be taken to state, with precision, the rights and obligations of the parties. For the purpose of recovering damages by one of the parties thereto, there can be no breach of a *void* contract. The term "void" as applied to a contract for or a deed of a homestead, not joined in by both the husband and wife, has its full significance. It means a complete nullity, without qualifications. The term is often applied with a meaning different from this.

"The term 'void' is perhaps seldom, unless in a very clear case, to be regarded as implying a complete nullity; but is to be taken, in a legal sense, subject to large qualifications in view of all the circumstances calling for its application and the rights and interests to be affected in a given case." *Brown* v. *Brown,* 50 N. H. 538.

In *Way* v. *Root,* 174 Mich. 418, 424, it was said:

"It is contended in behalf of defendant that the contract was void from its inception, and therefore cannot be made the basis of a cause of action, for the reason that the land described in it was owned by defendant and his wife together as tenants by entirety, and she did not join in executing the instrument. That the contract is invalid in so far as it is powerless to affect her interests in, or the title to, the property it describes is undoubtedly true. Neither a husband nor wife can alone convey or incumber the estate vested in them as tenants by entirety. In that light and for such purpose such an instrument has been held void by this court. * * * There is no limit on the amount or value of the realty which husband and wife may hold as tenants by entirety as in

case of a homestead, and they are not therefore analogous."

In *Lawrence* v. *Vinkemulder*, 157 Mich. 294, the land contracted to be sold was a homestead, but of a value much greater than the homestead exemption. Chief Justice BLAIR said:

"It being settled that a contract to sell and convey the homestead, signed by the husband only, is a mere nullity, it logically follows that no rights whatever can be predicated upon it. *Ex nihilo nihil.* To this effect is the overwhelming weight of authority." ·

The constitutional provision (article 14, § 2) is—

"*    *    * alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of his wife to the same."

This provision, as is pointed out in *Gadsby* v. *Monroe*, 115 Mich. 282, 285, deals with the land which constitutes a homestead, and not with any specific interest therein. See, further, *Hall* v. *Loomis*, 63 Mich. 709; *Lott* v. *Lott*, 146 Mich. 580 (8 L. R. A. [N. S.] 748). So a contract to convey land embracing a homestead was held ."utterly invalid as an alienation in equity of the homestead." *Phillips* v. *Stauch,* 20 Mich. 369, 381, 382.

The decisions referred to, and many others made since the opinions in *Dikeman* v. *Arnold,* 71 Mich. 656, s. c. 78 Mich. 455, were handed down, are based upon reasoning which negatives the idea that with respect to a homestead an unperformed promise made by the husband to sell it may be made the foundation of an action for damages. It is obvious, therefore, that, when a mutual contract to sell and buy a homestead is attempted to be made, both parties are under obligations to see to it that what is done is not a nullity. No idea of a tort, a wrong, committed by the vendor can be entertained if the contract is not exe-

cuted by the wife nor because the husband does not procure the homestead to be conveyed.

Undoubtedly, the deed of the husband, the defendant here, of the remainder of the land, would be good and would convey the fee, subject to the dower interest of the wife. But it is to the writing and all of its terms that we must look to determine what the agreement of the parties was. If the premises sold are a tract of pine timber, or land containing a deposit of ore, and, as to a fraction of it, the contract is void because a homestead is included, it may be assumed that the main purpose of making the contract was to dispose of the timber or ore. Here, the plain purpose was to buy and sell a farm, with buildings, etc., etc., and that purpose fails because it is not to be presumed, and does not appear, that plaintiff wanted to buy two, separated, 40-acre pieces of land without buildings. The reasonable inference is, rather, that, the agreement for the whole farm failing, the whole purpose of making the contract failed.

What has been said is an attempt to show, among other things, that plaintiff is relying, in fact, upon a breach of an agreement absolutely void; that, eliminating the idea of a breach of the promise to convey the homestead, there is no contract, no bargain, and no breach.

Assuming, however, but not deciding, that if plaintiff, the vendee in the contract, desired it, specific performance of the contract to convey the remainder might be enforced in equity, if the terms upon which enforcement should proceed could be gathered from the contract, it is evident that the contract itself affords no means of determining any agreed upon terms. No separate value is placed upon the three parcels of land or upon the personal property. Time and manner of payment of the purchase price of the farm and personal property are fixed, but there has been no

agreement about the time and manner of payment of a much smaller sum, the value of two of the parcels.

Assuming that any valid contract was entered into, it is a contract to sell and buy two 40-acre pieces of land and some personal property. There is no evidence of any demand by plaintiff for performance of such a contract, none of a breach of it. It is illogical to say that he has lost the profits of a bargain, since he has neither demanded, nor been refused, the actual bargain he made. Beyond this, is the contention urged by defendant, namely, that the purchase price of the two 40-acre parcels is not fixed in the contract. Not only is this so, but the terms of the contract afford no method for ascertaining either that separate prices were fixed or determining what they were. The objection should have been sustained. We may go further and say there is no evidence, parol or other, of any agreement upon the price to be paid for the two 40-acre parcels. Giving plaintiff's testimony its greatest probative value, in the light of the written agreement, it does not prove an agreement to sell and buy those parcels at any price. There was no proper issue to submit to a jury, and a verdict for defendant should have been directed.

The judgment is reversed, with costs to defendant, appellant.

MOORE, J., concurred with OSTRANDER, C. J.

BROOKE, J. I am unable to agree with the conclusion reached by my Brother OSTRANDER in this case.

In the early case of *Phillips* v. *Stauch*, 20 Mich. 369, a suit identical with the one in the case at bar was presented to the court except that in that case the vendee under the written contract sought specific performance thereof while in the case at bar he seeks damages for its breach. After determining that a

decree for the conveyance of the homestead cannot pass, the court says:

"The remaining inquiry is whether the record discloses a case in which the court ought to require the defendant to convey what he can, by deed executed by himself alone, and compel him to make compensation for deficiency.

"There are certain principles which govern the court in administering this equity.

"In proceeding to give a purchaser something different from that which the vendor contracted to sell, the court is enforcing a contract which the parties never in fact made, and the jurisdiction is therefore to be exercised under many restrictions. *   *   *

"The farm in question in this case contains a little over 92 acres, and is valued by complainant at a trifle over $6,340, and by the defendant at about $4,600. To give relief on the principle of compensation as contended for, would exempt from the conveyance the homestead right of the value of $1,500, and embracing the dwelling house, and would leave the balance of the premises subject to the contingent right of dower of defendant's wife.

"This would necessarily exclude from the conveyance a very material part of the subject-matter of the contract, and almost certainly result in great pecuniary injury to all parties interested. The adjustment of the compensation would be quite difficult in a case like this, and especially that part of it founded on the contingent dower right. That is quite different from the case where the right is consummate. The interest of defendant's wife would also be exposed to some detriment by partial alienation. These considerations, taken together, inspire the opinion that the case is not one in which the court ought to compel the conveyance with compensation. The case appears to be a hard one for complainant, and we should be glad to relieve him if circumstances permitted.

"The decree below must be reversed, and one entered in this court dismissing the bill, but without prejudice to any proceeding at law the complainant may be advised to institute upon the bond for a deed mentioned in the pleadings."

In *Stevenson* v. *Jackson,* 40 Mich. 702, specific performance was decreed under a contract signed by the husband alone, where after breach the husband and wife had joined in a deed of the property to a third person. Again, in *Hall* v. *Loomis,* 63 Mich. 709, the court declined to enforce specific performance but affirmed a decree dismissing the bill without prejudice to proceedings at law.

In principle the case at bar is upon all fours with the case of *Dikeman* v. *Arnold,* 78 Mich. 455. In that case as in this the defendant had entered into a contract for the sale (exchange) of a farm, part of which constituted his homestead. It was there said:

"We think the contract was good between Arnold and the plaintiffs. He knew when he made it that he could not perform it without the signature of his wife to the deed. He, in effect, bound himself to procure such signature. It in nowise differs in this respect from a contract to sell lands which one does not own at the time he makes such contract. The fact that one did not have the legal title at the time he made the contract, and could not procure it afterwards, has never been recognized as a legal defense to an action for breach of the contract."

In *Lawrence* v. *Vinkemulder,* 157 Mich. 294, the contract covered a house and lot, occupied by the defendant as a homestead, worth between eight and nine thousand dollars. Four of the judges of this court were of opinion that the facts of that case brought it within the reasoning of *Dikeman* v. *Arnold, supra,* while four others were of opinion that because the contract did not embrace *lands* in excess of a homestead, *Dikeman* v. *Arnold* did not control. Chief Justice BLAIR there said:

"The case of *Dikeman* v. *Arnold, supra,* is not inconsistent with this conclusion. That case differs from this in that the contract covered lands not embraced within the homestead."

While the case of *Way* v. *Root,* 174 Mich. 418, involved property held by the husband and wife by entireties and therefore is not exactly in point; the opinion distinctly recognizes the authority of *Dikeman* v. *Arnold,* quotes from that opinion with apparent approval, and says:

"An agreement to convey, though invalid to affect the title to real estate, in whole or in part, may yet be valid between the parties as a basis for the recovery of damages by reason of its breach."

I have been unable to find that the law as announced in *Dikeman* v. *Arnold* has ever been overruled, nor is there any reason in equity and good conscience why it should be overruled. So long as the wife is not disturbed in her homestead rights why should not the contracting husband be made to answer for his default in failing to perform his contract?

I concur, however, in a reversal of the case upon the ground that the theory upon which it was submitted to the jury was wholly at variance with the theory of the declaration. I am of opinion that the case should have gone to the jury under instructions as to the measure of damages approved in *Allen* v. *Atkinson,* 21 Mich. 351.

The judgment should be reversed and a new trial ordered, with costs to appellant.

BIRD, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred with BROOKE, J.