SUSAN H. WILLIAMS v. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

*Railroad companies—Negligence—Operation of road under traffic
agreement—Possession—Evidence—Failure to produce books
upon notice—Pleading—Extent of injuries.*

1. Plaintiff sued for personal injuries received by falling through a cattle guard on a railroad which the defendant was operating at the time of the trial under a traffic agreement made with the company which owned the road. The plaintiff contended that there was sufficient evidence that the defendant was in possession of the road at the time of the accident to raise a question for the jury. On a review of the testimony, plaintiff's contention is sustained.

2. A witness for the defendant, who had been treasurer of the road owning the line, testified on cross-examination that $80,000 of the earnings of the road were sent by him to bankers in New York city, at the direction of the president of his company, who was also president of the defendant, and that certain books in the defendant's possession, and which it had failed to produce pursuant to notice, would show what disposition was made of said money. And it is held that the natural and proper inference, if these facts were established, was that the defendant did not care to produce said books, for the reason that they would show the receipt of this money by the defendant, and counsel might properly urge it to the jury.

3. The accident occurred January 2, 1892. The defendant admitted that it was in possession of the road April 1, 1892. And it is held that a mortgage upon the road, given by the defendant, and dated May 15, 1893, had no tendency whatever to prove that the defendant was in possession of the road at the time of the accident, and that it was error to admit it.

4. It was averred in the declaration that plaintiff's body was in- jured by dislocation, straining, and laceration, and injuries of muscles, nerves, and otherwise. The evidence tended to show that the knee and hip were injured, and that in consequence the sciatic nerve became inflamed; a physician testifying that, as a result of the injury, neuritis, described as an inflamma- tion of a nerve, followed. This evidence was objected to, because no secondary injuries or results were counted upon. And is held that the evidence was properly admitted, under the declaration.

Error to Cass. (O'Hara, J.) Argued October 3, 1894. Decided December 7, 1894.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Howell & Carr* and *C. E. Cowgill (John T. Dye,* of counsel), for appellant.

*E. L. Hamilton* and *Edward Bacon,* for plaintiff.

HOOKER, J. Plaintiff recovered a judgment for per- sonal injuries received by falling into a cattle guard, from which defendant appealed. The principal contest in the case was over the question of defendant's operation of the road; it being claimed that it was not in possession of the railroad at the time of the accident, though it was after- wards. The road was owned by another company. The plaintiff claims that there was sufficient evidence that defendant was in possession of the road at the time of the accident to raise a question for the jury. The evidence of the plaintiff upon the subject consisted of:

1. A traffic agreement granting to the defendant the right to operate the road and have its earnings for 100 years from July 1, 1891, and promising, on the part of the defendant, to raise $4,000,000 upon its bonds to equip the road.

2. A mortgage executed by the officers of both com- panies to secure said bonds, given in conformity to the agreement.

3. Testimony by the plaintiff that she bought a ticket at the station of the Big Four Company (that being a name by which defendant is known), and that she supposed it was over the Cleveland, Cincinnati, Chicago & St. Louis road; that "James Truitt was the company's agent at that place;" and that she supposed "the station and platform were on the ground of this corporation." To this last statement, counsel for the defendant said, "No question about that."

4. James Truitt's testimony that he knew when this railroad company extended its right of way through there, and that the station, platform, and cattle guard were on the company's ground. He was not asked whether he was the agent of the defendant.

Upon this showing by the plaintiff, it is clear, and neither side disputes, that the Cincinnati, Wabash & Michigan Company was the owner of the railroad, and that whatever rights to enter into possession of or operate it the defendant had, it acquired from that company. In the light of that admitted fact, the testimony of Truitt did not tend to show that the defendant was in possession, as his testimony was as consistent with the idea that he referred to the Cincinnati, Wabash & Michigan Company as to the defendant. It was apparently undisputed that at the time of the trial the defendant was in possession of the road. The statement of the plaintiff that she bought a ticket at the station of the Big Four road was true, in a sense, though the Big Four road was not in possession at the time. She bought it at the station, and that station was, when the question was asked, the station of the Big Four road. Her suppositions at the time of the trial that the ticket was over the Cleveland, Cincinnati, Chicago & St. Louis Line, and that the station and platform were upon the company's ground, threw no light on the question of possession at the time of the accident.

It is plain that the testimony of these two witnesses did not furnish much light upon the question of defendant's possession at the time. Some of this testimony was

admissible, because it tended to show that the accident occurred upon the railroad, and that the ticket was purchased of the company which was operating it, and the motion to strike it out was therefore properly denied. Moreover, under ordinary circumstances, such evidence would be sufficient to sustain a verdict, if there was no evidence to the contrary. It cannot be said that it was no evidence of possession, and therefore the court did not err in refusing the request to charge that it was not direct evidence that the defendant was in possession. If the statement was intended to be that the plaintiff bought a ticket at the defendant's station, technically it was as direct and comprehensive as though she had said that she knew that she bought a ticket at the station of the defendant. It was not as emphatic. It is the other evidence in the case that renders this testimony weak, and it is because it begets the belief that the witness may not have discriminated between the two companies. It was therefore for the jury to determine its value. The court might, with propriety, have said to the jury that this testimony should be viewed in the light of plaintiff's means of knowing whether the defendant was in possession, but it was not error to refuse to instruct the jury that the testimony of the plaintiff and Truitt was not competent evidence that the defendant was operating the road.

The contract and mortgage were legitimate evidence that the defendant was in possession, and, in the absence of the testimony given for the defendant, would have supported the claim of possession sufficiently to sustain the verdict.[1] Being so, we cannot say that the testimony of the defendant has overcome it.

Defendant's counsel argue that the right of defendant

---

[1] The traffic agreement was dated April 1, 1891; the mortgage, May 9, 1891; and the accident occurred January 2, 1892.

to take possession does not establish the fact that it did so, and this is true; but the fact remains that, having a grant of the road, and having issued its bonds as it promised to do, it is not a violent presumption to conclude that it had taken possession. That presumption can be overcome by proof to the contrary, but it is for the jury to say when it is overcome. Moreover, cross-examination of the witnesses called to overcome this presumption developed the fact that the earnings of this road were not retained by the treasurer of the Cincinnati, Wabash & Michigan Company, but, contrary to ordinary custom, if not in violation of the statute, they were sent to a bank in New York by direction of the president, who, it turns out, was president of the defendant; and it also appears that the treasurer's book of the Cincinnati, Wabash & Michigan Company was in the hands of the defendant company, and that, although the court postponed the trial nearly a month to enable defendant to produce books and papers which would throw light upon the subject, notice to produce which was given, no effort appears to have been made to produce this book, which was no further away than New York. We think there was room for the argument that while the road was ostensibly managed through the employés of the Cincinnati, Wabash & Michigan Company, and in its name, it was actually conducted by and for the benefit of defendant,—a question which could only be determined by the jury. What has been said disposes of several of the assignments of error in relation to the introduction of evidence.

Counsel for defendant complain that the plaintiff's attorney was permitted to read to the jury the notice to produce documents and papers, and to argue that the defendant had not complied with the order of the court by producing them. It is said that the records of the court show no such order, that it would have been void if

made, and that counsel could not properly assume that defendant had books or papers which it did not produce. The record in the case shows that the court made an oral order to produce these books, and gave counsel nearly a month to do so. This order was probably no more or less than the usual determination, when such questions arise, that the plaintiff was entitled to the production of such documents. No exception is called to our attention, in relation to this order, taken at the time it was made. As to the assumption that documents existed, it is sufficient to say that the witness testified that he sent $80,000 of the earnings of the road to New York, at the direction of the president of his company, and the books would show what disposition was made of it, which books were in defendant's possession. Those books were covered by the notice or order, but were not produced. What was the inference, if not that defendant did not care to produce them, for the reason that they would show the receipt of this money by defendant? It was a natural and proper one, if these facts were established, and counsel might properly urge it upon the jury.

Various exceptions were taken at the close of the argument of counsel to statements made in the course of such argument; among others, to his charge that "defendant was trying to dodge this liability by claiming it was not operating the road;" that "defendant was a sea serpent, which had swallowed the small fish," i. e., the C., W. & M., in 1891; that "it did not mortgage its other lines, but only that of the C., W. & M;" that the defendant was liable, regardless of the actual management; that "the Cleveland Company was a monster." It is true that this controversy practically turned upon a cold question of fact, i. e., whether the defendant was in control of the road at the time of the accident; and, were the question to be submitted to a bench of judges, we doubt if counsel

would have couched his points in the language which he seems to have thought proper to use to the jury. The court might properly have required counsel to confine himself to a discussion of the facts in more temperate language. We cannot, however, presume that it had the effect that counsel for defendant seems to think it had. It may have had an opposite effect upon the jury. We must suppose that, as men of intelligence, they were capable of comprehending the point at issue, and that, as honest men, they determined that point upon the testimony and the instructions of the court. As a rule, the trial court must control these matters, in which it has a large discretion.

A mortgage upon the road, executed by defendant, dated in 1893, was offered in evidence. Counsel for defendant allege this to have been error. It is asserted in opposition that the language read from it was not objected to, or any exception taken. A reference to the record shows that the admission of this mortgage was strenuously opposed, and exception taken. It was dated a year after the admitted time that the defendant took possession. It was clearly immaterial, and had no tendency whatever to prove possession two years before. It was error to admit it. *Pierson v. Spaulding,* 67 Mich. 640, 649; *Dikeman v. Arnold,* 78 Id. 455, 460, 83 Id. 218.

A physician gave evidence tending to show that, as a result of the injury, neuritis followed. This is alleged to have been inadmissible, under the declaration, because no secondary injuries or results were counted upon. Neuritis was described as inflammation of a nerve. The declaration alleged that plaintiff's body was injured by dislocation, straining, and laceration, and injuries of muscles, nerves, and otherwise. The evidence tended to show that the knee and hip were injured, and that the sciatic nerve

became inflamed in consequence. We think this was properly admitted, under the declaration.

It is unnecessary to discuss in detail the various other assignments of error. Many of them are upon refusals to give specific requests, where the ground is covered by the general charge, or where, under our view of the evidence, there was no occasion to give them. We have examined them, and find nothing in them calling for a reversal of the case.

For the error above mentioned the judgment must be reversed, and a new trial ordered.

The other Justices concurred.