GEORGE C. MILLER *vs.* CHARLES L. ROBERTS.

Berkshire.    June 16, 1897. — September 9, 1897.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract — Failure of Consideration — Action — Exceptions —*
*Statute of Frauds.*

If B. receives a deed of A.'s land under an oral contract to convey to A. a farm of greater value, taking back a mortgage upon it for the difference, and, after delaying to make such conveyance, finally sells and conveys the farm to a third person without A.'s consent, A. may maintain an action against B. for the value of the first named land, and he is not obliged, before bringing the action, to restore articles of personal property of small value which were to be conveyed to him with the farm, and which he had appropriated before the conveyance by B.

A general exception to the charge to a jury brings up for revision only those portions which are inconsistent with the instructions requested.

CONTRACT, in two counts, to recover the value of a house and land in Adams, alleged to have been sold by the plaintiff to the defendant under an oral agreement. The answer, among other defences, set up the statute of frauds. Writ dated August 30, 1895. Trial in the Superior Court, before *Maynard,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified, among other things, as follows: "In consequence of information received I went to the defendant's home, and he wanted to know what I thought about buying the Butler Farm. I said I did not care whether I bought it or not. Previously I had had some talk with Butler about buying it. The defendant said that Butler owed him, and that if he bought the farm he wanted me to have it. He went to see Butler, and came back saying he had bargained for the farm, stock, and tools on it. He said that if I would take the place he would get his pay from Butler. I was to give a mortgage for $3,000, and a deed of my place for which I was to have $1,350. We afterward went to a lawyer's office, and I delivered to the defendant a deed of my place made out to Butler. He then said that his wife was away, so that he could not convey the farm. By agreement between us, I was to go on to the farm and take possession of the same, and the stock and tools, as soon as he got his deed

from Butler, and he was to bring me a deed of the farm, stock, and tools when his wife returned, which was understood to be on the Sunday following. I then bought a wagon and horse of him and moved right on to the farm. On the following Sunday he came with his wife to see me on the farm, and said he would have the deed made right out. He came to the farm several times, and always said he would have the deed made out, but that he had been too busy. He kept promising to give me a deed, and excusing himself for the delay by saying he had been too busy, until about the last of July or first of August, 1896, when one Greenburg and one Stone came to look over the farm, as I understood sent by the defendant. I then went to him to inquire what that meant. He denied having sent them, but said he had sent them to look over my father's farm, which was for sale. During this interview he said those men could have the farm, stock, and tools I was in possession of for $6,000, and if they took it he would pay me well for the time I had been on it. Up to this time he had not offered me a deed. He said that it would be a good thing for him and for me if he sold it to them. This was the first conversation had about selling the farm. After this Stone, Greenburg, and Frumkin came down to look at the farm. After I saw the defendant at this time and before he sold the farm I had no further talk with him about selling it. I never agreed that the farm should be sold by him to Greenburg and Frumkin until I went to see him, and I consented to the selling of the place at that time if he would pay me for my trouble, that is, my work on the farm, and my place in Adams. Among the stock and tools on the farm at the time I went there were a horse hay rake, a mowing machine, one sow, etc. I remained on the farm about four and one half months. I left all the stock and tools I found on the place when I went there, except one sow or pig which was sold. I left two small pigs on the farm. I swapped off the mowing machine."

On cross-examination, the plaintiff testified as follows: " The first time I assisted the defendant to sell to Greenburg and Frumkin was when I went to his house about the time the men were looking over the farm, about the last of July or first of August; from that time I did everything in my power to assist him to sell the farm, stock, and tools. I did not send

Greenburg and Frumkin to him, and I did not tell them I could not keep the place; when he came to the farm I asked for a deed and said I had nothing to show for my property; I did not tender him the mortgage I was to give back, because I had no deed; I never told him to get as much as he could for the farm; when I found I could not get a deed of the farm, stock, and tools myself, I was not unwilling that he should sell to them; he never refused to give me a deed, but promised always to do so after he got over his hurry. The horse rake that was on the farm is over the mountain where I did some haying; I took it away; I never brought it back and delivered it to him. Previous to bringing this suit I made no tender to him for the machine that I traded off, and made no effort to return the machine that was on the farm when I went there, or the amount I received for the sow; the sow on the place when I went there had a litter of pigs after I took possession, and I sold four of them; I took the money and made no tender of it to him previous to bringing this suit."

On re-direct examination, the plaintiff testified: "The defendant knew at the time that I took the horse rake to do some haying and made no objection; he did not request its return; right away after I traded the mowing machine he knew of it; he said nothing about it."

Bessie G. C. Miller, the wife of the plaintiff, testified, among other things, as follows: "The defendant, my husband, and myself had some talk in a lawyer's office; I asked what arrangements had been made, and the defendant said he had sold the farm, stock, and tools to my husband, allowing us $1,350 for our place, and would take a mortgage back for the rest; he said his wife was away, and that on her return Saturday he would make out the deed, have her sign it and bring it down; after that he came to the farm with his wife, and said he would make out a deed and bring it down; his excuse for not bringing the deed was that he was busy; after my husband saw him, after the men were looking over the place, he came to the farm, and then it was talked that it was best to sell the farm, he saying he would make it all right in selling the farm."

On cross-examination, the witness testified as follows: "The hay crop did not amount to much, and discouraged my husband;

my husband was satisfied with the farm, providing he had the deed."

The plaintiff's father and mother both corroborated the previous witnesses as to the defendant's promise to bring the deed to the plaintiff.

The defendant testified, among other things, as follows: "I learned that the Butler Farm was for sale from the plaintiff when he came to my place the last of April or first of May. He wanted me to buy the place for him, and he would turn in his place toward it; I went to buy the farm of Butler, as his agent. Before I went to see Butler, the plaintiff agreed to convey his place direct to Butler; I saw Butler, and returned to my place and told the plaintiff what Butler would do, and in consequence of it the plaintiff said he would take the farm; and therefore I bought the farm. This conversation was before he made out his deed to Butler and gave it to me; I told him that when my wife got back I would give him a deed of the farm; I have never refused to give a deed, and he has never asked me for one; when my wife got back I went down there and told him I was willing to give a deed at any time, and he said he was not worried about it; it was my busy season, and I was remarkably busy then. I first knew the plaintiff did not want to keep the farm when the hay crop failed; I learned that he did not want to take the place, and in consequence of the information I received I went to see him. He wanted I should take it back or sell it for him; he said he could not complete his bargain, could not pay for it; I told him I could not take it back; that I was too busy to look after it or find a purchaser; about the last of July Greenburg and Frumkin came to my place; they said the plaintiff sent them; he afterward said he sent them; after seeing them I went to see him, and asked him if he was not making a mistake in selling it; he replied that he could not pay for it, and if he had to buy hay he would get into debt so he never could get out of it; he said he thought Greenburg and Frumkin would give $6,000 for it; they gave $4,500 for the farm, stock, and tools by my becoming responsible to one Cook for a claim he had on it to cut timber. While he and I were trying to sell the farm, stock, and tools to Greenburg and Frumkin, I was all the time willing to convey to him, and did not because he did not want

to accept a deed ; he never came with a mortgage and asked me for a deed ; I should not have sold the farm to Greenburg and Frumkin except at his request. Previous to bringing this suit he had not offered to surrender to me or make me whole for any of the property he had sold, and made no tender of the amount of the sales ; I did not consent to the plaintiff trading off the mowing machine, and knew nothing about it ; I never knew anything about his taking the horse rake up to Savoy five miles away."

On cross-examination, the defendant testified as follows : " I don't know as I went there to purchase this farm as his agent ; he wanted I should buy it, and I bought it for myself, and I went for myself. I understood that he expected all over and above the price of the place ; after I sold by bargain to Greenburg and Frumkin, and before the deed was made, I saw the plaintiff a number of times, and I told him I could not get as much for the farm ; he knew we could not get $6,000 from them ; he said to me, ' I cannot trade with them, see if you can ' ; this was before the bargain was made ; I told him what I got for the place after the deed was made; it was the first time I saw him after the trade was made."

Harry I. Greenburg, called as a witness by the defendant, testified as follows : " I first saw the plaintiff in relation to buying the farm ; he sent me to the defendant ; Frumkin was with me. I saw the plaintiff on the farm and told him I would buy if I could buy it right ; he told me to go and see the defendant, and try and make a bargain for the place. I afterward went to see the defendant ; I told him what the plaintiff said, and he came with us down to see him ; the plaintiff said if he had money enough he would not let the place go. I went to see the farm again, and saw him, and he wanted to know if I had bought it ; said $6,000 was cheap for the place ; he tried to have me buy the place ; I saw him and the defendant after that about buying the place ; I told the defendant I could not give as much as he asked, and the plaintiff said, ' Don't bother with those fellows any more, I have another man to take it ' ; I paid $4,500 for the place, and the plaintiff gave possession about the 2d or 3d of September, 1895."

Max Frumkin, called as a witness by the defendant, corroborated the testimony of the previous witness.

Albert T. Butler testified as follows : " When the defendant came to buy the farm he did not claim to represent the plaintiff, but himself ; the first time he came to see me no price was fixed upon ; the second time it was ; I agreed to sell the farm, stock, and tools all at once in one deal."

Theresa Roberts, the wife of the defendant, testified as follows : " Before Greenburg and Frumkin came to our house to see my husband, the plaintiff came and said he wished my husband would take it back and sell it. He said there were some men in North Adams who wanted it, and he would like to have him go and sell it or see them, for he couldn't sell it to them ; he said he liked the place, but could not pay for it."

The plaintiff, recalled, testified : " I never objected to taking a deed on account of a light hay crop ; I did not see Greenburg and Frumkin the first time they came to the farm ; I never sent them to the defendant ; he never told me what he got for the farm ; I asked him, and he wouldn't tell ; I never requested him to sell the farm to Greenburg and Frumkin ; the wagon was not purchased with the farm, stock, and tools."

The defendant requested the judge to instruct the jury as follows :

" 1. If the verbal contract was for the sale of the farm, stock, and tools, for one entire price, then the contract was entire, and cannot be severed. 2. If the plaintiff, under the verbal contract to purchase the farm, stock, and tools for an entire price, was put into possession of all the same, he cannot recover in this action the value or price of the lot conveyed by the plaintiff, without before suit brought having surrendered possession or offered to surrender possession of all the property, real and personal, that he had received. 3. If the plaintiff under the verbal contract in question was put into possession by the defendant of the farm, stock, and tools, and prior to the institution of this suit had not surrendered or offered to surrender possession of all the property he had so received possession of, but on the contrary had retained possession of any substantial part thereof, as the hay rake, mowing machine, and wagon, or either of them, then he cannot recover in this suit the value or price of the plaintiff's place conveyed to Butler. 4. If the plaintiff sold a part of the personal property he so received from the defendant, which he was therefore unable to surrender, it was his duty to

offer to the defendant the proceeds of such sale or sales, or the value of the same, and without such tender prior to this suit he cannot recover the value of the price of the lot conveyed by the plaintiff.    5. If after the plaintiff took possession of the sows as a part of the personal property in question, and one or two of them thereafter gave birth to a litter of pigs, which pigs the plaintiff sold and took the proceeds of, it was the duty of the plaintiff to have tendered to the defendant the proceeds of such sales, or the value of the pigs, before bringing this action, and if he failed so to do, he cannot recover the value of said place so conveyed to Butler.    6. If the plaintiff informed the defendant or sent word to him that he, the plaintiff, did not wish to carry out the verbal contract of sale, or could not, and the defendant, relying on such information, did sell the farm, stock, and tools, then the plaintiff cannot recover for the place conveyed to Butler. 7. If the plaintiff, after taking possession of the farm, stock, and tools, influenced the defendant to sell the same, he cannot recover the value or price of the land conveyed to Butler by the plaintiff.    8. If the plaintiff assisted the defendant, and acted with him in selling the farm, stock, and tools to the purchasers Frumkin and Greenburg, and did not object to the sale, but acquiesced in the sale, he cannot recover the price of the land conveyed by the plaintiff to Butler.    9. If the plaintiff sent the purchasers Frumkin and Greenburg, or either of them, to the defendant, to purchase the farm, stock, and tools, and so conducted himself toward them as to induce them to purchase, and toward the defendant as to induce him to sell to them, he cannot complain that the sale was made, and cannot recover the value of the place sold by the plaintiff to Butler.    10. If the defendant was willing to sell and convey to the plaintiff, and sold to Greenburg and Frumkin, after the plaintiff had informed him that he could not carry out the contract, or so sold because the plaintiff wished him to do so, then the plaintiff cannot recover the value or price of the place conveyed to Butler.    11. The plaintiff must have offered to have performed all he was required by the contract to have done, or he cannot recover.    12. Upon all the evidence the plaintiff is not entitled to recover.    13. It was the duty of the plaintiff, before bringing this action, to have surrendered possession of everything he had received of the de-

fendant, or to have offered to do so, and if there was a horse rake so received, which the plaintiff took away five miles, where it was at the time of the suit, upon the farm occupied by the plaintiff, and did not return the same or offer to return the same to the defendant prior to this suit, then this action for the price or the value of the place conveyed by the plaintiff in part payment of the farm cannot be sustained. 14. The right of the plaintiff to recover the value of the place conveyed in part payment of the farm rests upon the refusal of the defendant to convey the farm, or inability to do so by reason of having conveyed the farm to other persons, and if the plaintiff at the time the farm was conveyed was unwilling to accept a deed of the same, or was willing that the defendant should convey the farm to Greenburg and Frumkin, there was no such failure of consideration for the conveyance by the plaintiff of his place to Butler as to sustain an action for the value or price of the same upon the pleadings herein. 15. The right of the plaintiff to recover the value of the place conveyed by him upon the defendant's promise to purchase the Butler Farm and convey it to the plaintiff must be founded upon the theory that there is a failure of consideration, due to the defendant's refusal or inability to carry out his contract to convey; and if the defendant was willing to convey to the plaintiff, and instead of so doing, at the plaintiff's request and by his consent conveyed the farm to Greenburg and Frumkin, then the plaintiff cannot recover in this form of action for the value or price of the place conveyed by the plaintiff. 16. If the agreement between the plaintiff and the defendant was that the defendant should purchase the farm of Butler, and that the plaintiff should convey his house and lot in part payment of the same, and the defendant to convey the farm to the plaintiff thereafter, and take a mortgage back for $3,000, then such agreement will not support the allegation in either count of house and lot sold to the defendant by the plaintiff."

The judge declined to give the instructions requested, and instructed the jury as follows:

"The plaintiff claims that he had an oral contract with the defendant, whereby they made a trade. The defendant purchased a farm, and the plaintiff turned in towards it, or conveyed to a party for the benefit of the defendant, a house and lot in

Adams, and with the understanding and agreement that in addition to that he would give a mortgage for $3,000, that is, his place and $3,000 for the farm, stock, and tools upon it. And the claim is that the plaintiff has conveyed the property to the defendant, but that the defendant has neglected and refused to convey the farm to him, and has put the farm out of his hands, so that it is impossible to comply with his contract, and nothing has been paid the plaintiff for the place conveyed. The plaintiff says that he conveyed to the defendant this place, but the other party refused to convey that farm to him and so the trade fell through. If there were nothing else in the case, it would be plain that there would be nothing left but to render a verdict for the plaintiff for the value of his place. If not an agreed price, then for the value, for the defendant would have the plaintiff's property, and he had, either by refusing to convey, or by conveying to somebody else, put himself in a position where he could not comply, and he would have to pay him back, either deed the farm to him (if he had not conveyed to some one else), or pay him the price of his place.

" There are other questions which come into this case, and so you have to pass upon them. There is no question that the farm has been conveyed away to some person, so that the defendant, before suit brought, could not comply with the original contract, because he had put it out of his power, and had conveyed to some one else. So when he did that, the plaintiff was in a position, if he had done nothing to vary the original contract, to demand the price; either the agreed price or the value of the place. But the defendant says that was not all there was to it, and there has been considerable testimony introduced, some part of it, in fact very much of it, to show the relation of the parties, the surrounding circumstances, etc., so that you can take their testimony in the light of the circumstances; because a thing which might be probable under one set of circumstances might be improbable under another set of circumstances. So very much testimony has been introduced to show other things bearing on the relation of the parties, by which you may test their testimony.

" The defendant says, ' True we did make a bargain, I was to buy the farm all in my own name, and the trade was that I was.

to take the place and have a mortgage of $3,000 from this plaintiff' ; if they agreed to that, that was a bargain so far. The defendant was to deed to the plaintiff this farm in consideration of the mortgage of $3,000 and the place conveyed by the plaintiff. But the plaintiff says that, for one reason or another, (although the deed was given by the plaintiff to the defendant,) this deed for the farm, stock, and tools to him was delayed. The defendant says he never refused or objected until it turned out that the hay crop did not look well, and then the plaintiff became satisfied he could not pay for the farm, and wanted him to take it back or to sell it to some one else and break up the bargain; that in pursuance of that request of the plaintiff, by his assistance he did deliver the deed and did make the sale to those German people for the benefit of the plaintiff; and that the plaintiff was to have the money, whatever was left of the sale after taking out what was due to the defendant. I understand this to be the claim of the defendant, that he never refused to carry out his contract, but with the assistance and at the request of the plaintiff did sell the farm to them, Greenburg and Frumkin, as though it were the plaintiff's land; as if he had given a deed to the plaintiff, and taken from him the mortgage of $3,000.

" You have heard the story of the parties in regard to that, and the story of the persons engaged in working up the trade. Now the plaintiff says that is no such thing. The plaintiff claims, as I understand it, that this defendant had sent persons to look at the farm, that is, for a certain price, $6,000 ; that he never consented to anything beyond that; that when the defendant sold the farm for the sum of $4,500, (I think there is no dispute about the sum,) that was done without his consent or knowledge. That is where the two propositions stand. Now if the defendant put this property out of his hands, so he could not convey it to the plaintiff, (unless he did that by an understanding between the plaintiff and defendant that it should be done for the plaintiff's benefit, the plaintiff to have the money,) then this suit can be maintained on the part of the plaintiff, either for the agreed price that the house was put in at, if their minds met, or if no agreed price, then for the value of the house.

" The evidence is not contradicted, either by the defendant

himself or by the two Germans, that the plaintiff said at that last interview he had with the Germans, that if they did not want that farm for $6,000, ' Let them go, I have another customer for it.' But the defendant says that after that the plaintiff told him, ' I cannot do any more with those persons ; you go ahead and do the best you can.' If that is true, then that would authorize the sale by the defendant. That is one of the important elements in this case. There is no dispute, and the plaintiff admits he did what he could to help carry out the sale ; but he says that he only went so far, though, as to represent it at $6,000. But the defendant says that after that fell through at $6,000, the plaintiff did say to him to do the best he could, and that in pursuance of that he made the sale at $4,500. If that is true, he had authority to sell it for the best price he could, and if he made the sale at that price, and it was understood that the sale was made for the benefit of the plaintiff, as though it was his own land, this suit cannot be maintained. If, on the other hand, there was no such understanding as to the amount, the suit can be maintained, so far as the price of the house is concerned. Now it does not follow that, if you find for the defendant, the plaintiff must lose his money. The trouble is with the pleadings. We have to try cases on the pleadings. The plaintiff would have to bring another suit in another form to maintain his claim. If it was the understanding that the farm was to be sold for the benefit of the plaintiff as though he owned it, the difference between what the farm brought and what was due the defendant would be what was coming. That cannot be recovered in this case, because the pleadings do not allow it.

" It is important that you consider the matter carefully, and determine the position of the parties at the time the sale was made to these Germans. If it was made without his consent, — I say without his consent for this price, — the plaintiff is entitled to recover for the price of his house. But, on the other hand, if it was the understanding that it was to be sold the same as if he owned the place or farm, and he sold it for the plaintiff's benefit, the verdict must be for the defendant. If the farm, as I have explained to you, was sold by the consent of the plaintiff, and for the benefit of the plaintiff, that he was to have the money, the overplus of the mortgage, and with his consent, he cannot recover."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions " to the foregoing instructions and refusals to instruct."

*M. E. Couch*, for the defendant.

*C. T. Phelps*, for the plaintiff.

KNOWLTON, J.   The principle of law on which this action is founded is, that if one has received money or other property as the consideration of an executory contract which cannot be enforced by reason of the statute of frauds, and if he then refuses to perform the contract, he is liable to the other party under an implied promise to return the money or pay for the property. *Dix* v. *Marcy*, 116 Mass. 416.   *Root* v. *Burt*, 118 Mass. 521.   *Cook* v. *Doggett*, 2 Allen, 439.   *Basford* v. *Pearson*, 9 Allen, 387.   *Abbott* v. *Draper*, 4 Denio, 51.

The evidence showed conclusively that the defendant had received a deed of the plaintiff's house and land, running to a third person for his benefit, under an oral contract to convey to the plaintiff a farm of greater value, taking back a mortgage upon it for three thousand dollars to cover the difference.   It was undisputed that he had neglected for a long time to make the conveyance of the farm, and that he finally sold and conveyed it to other parties, thus putting it out of his power to perform his contract with the plaintiff.   The principal questions in the case are, first, whether the defendant's conduct in selling and conveying away his farm was a breach of his oral contract with the plaintiff, which made him liable for the value of the plaintiff's house and land as property then in his hands for which the expected consideration had failed, or whether the sale was made under an arrangement with the plaintiff which would give the plaintiff a remedy in another form; and, secondly, if the sale was made in violation of his contract, whether it was a condition precedent to the plaintiff's right to recover that he should return all the benefits that he had received under the contract.

The defendant's sixth, seventh, eighth, ninth, tenth, eleventh, fourteenth, and fifteenth requests for rulings relate to the first of these questions; his first, second, third, fourth, fifth, and thirteenth, to the second.

The twelfth and sixteenth requests are sufficiently answered by the proposition at the beginning of this opinion.

In regard to the first of these questions, the presiding judge instructed the jury, in substance, that in order to recover the plaintiff must prove that, although he had done nothing to vary the original contract, the defendant put the property out of his hands so that he could not convey it to the plaintiff, and did it without any understanding between the parties that it should be done for the plaintiff's benefit. Under the instructions, the jury could not have returned their verdict for the plaintiff without finding that the sale was made without his consent, in violation of the oral contract. Although the instructions were not as full as they might have been in regard to possible aspects of the evidence, we think they must have been understood by the jury as presenting the simple question, Did the defendant sell the property on his own account, without the consent of the plaintiff, while the oral contract remained unchanged? The finding upon this issue settled the principal controversy in the case.

The second of these questions arose upon the evidence that there were articles of personal property which were to be conveyed to the plaintiff with the farm, some of which, of small value, had been appropriated by the plaintiff before the defendant had made the conveyance to the purchasers. The defendant in his argument treats the case as if the plaintiff had rescinded the contract by his voluntary act, against the will of the defendant, and invokes the familiar doctrine that one rescinding a contract for fraud or breach of warranty, and suing to recover back the consideration, must first put the defendant *in statu quo*. *Bartlett* v. *Drake*, 100 Mass. 174, 176. But it is the defendant who has elected not to perform the contract, and has made it a nullity. By his own act he deprived himself of the protection of the contract as a justification for his retention of the plaintiff's house in the hands of the person to whom it was conveyed for his benefit. He put it out of his power to turn over to the plaintiff the expected consideration, and left himself the holder of the plaintiff's property without having given any consideration for it. The property having come into his hands in consideration of a promise which could not be enforced, and which he has repudiated, the law implies a promise to pay the fair value of it. *Root* v. *Burt*, 118 Mass. 521. *Basford* v. *Pearson*, 9 Allen, 387, 390. The right to recover this accrued to the

plaintiff at once, and he was not obliged to restore the small articles of personal property which he had used under the contract. Of course he must account for them, but his right to sue stands upon independent grounds.

In the present case no question was raised in regard to an allowance for these articles in making up the verdict. Seemingly, they were of trifling value, but if there is dispute about them, the rights of the parties in this respect can be determined hereafter.

These are all the questions raised by the bill of exceptions. The defendant's general exception to the charge did not direct attention to any particular part of it. It brings up for revision only those portions which were inconsistent with the instructions requested. We are of opinion that the instructions given were sufficient.                                    *Exceptions overruled.*