WAY *v.* ROOT.

1. ELECTION OF REMEDIES—COUNTS—TRIAL—INCONSISTENT POSITIONS.

Plaintiff should be required to elect between inconsistent counts of a declaration which are contradictory and conflicting as to theory or facts: he should not be permitted to occupy repugnant positions.

2. .SAME—VENDOR AND PURCHASER—COMMON COUNTS.

In an action brought by the assignee of the purchaser's interest in a land contract where the purchaser had paid the full price, and the vendor had failed to convey as agreed, because his wife refused to execute the deed, plaintiff was entitled to go to the jury on a declaration setting up the contract and its breach, and on the common counts: in case they should find that the defendant had acted in bad faith, the damages under the special count would be the value of the property at the time of the breach; if they determined that defendant was acting in good faith plaintiff could recover the money paid and interest, under the common counts.

3. VENDOR AND PURCHASER—LAND CONTRACT—BREACH, ACTION FOR.

.   Where a vendor has failed to perform a land contract upon full performance by the purchaser, the latter need not rescind and tender possession of the premises to the vendor, or otherwise place him *in statu quo*, in order to recover in an action

for breach of the contract: and under a contract not providing for possession by the vendee before full performance, it was not a condition precedent to an action to retender possession: the purchaser's occupancy which continued after the execution of the land contract is to be considered the same as it had previously been, *i. e.*, that of a tenant.

4. SAME—ESTATES BY ENTIRETY.

While neither husband nor wife can affect the interest of the other in land held by the entirety, and a contract of either to convey the property is ineffective to vest any title in the vendee, or encumber the land, such a contract is not absolutely void and affords an action for breach of a land contract against the one who executed it.

5. DAMAGES—BREACH OF LAND CONTRACT.

Whether or not the good or bad faith of the vendor should be permitted to affect the question of damages,—a point which is not determined,—the court did not prejudice the rights of defendant by submitting the question to them instructing the jury that if defendant acted in bad faith the damages would be the market value of the property at the time of the breach of the land contract, the jury finding for plaintiff on that question; plaintiff was entitled to recover the market value of the premises including improvements and any increase in value, when he had not rescinded the contract.

6. HUSBAND AND WIFE—ESTATE BY ENTIRETY—RENT.

In Michigan the husband has the right to possession, use, and control of realty held by the entirety with his wife, and is entitled to the income or rent from it.

7. SAME—SET-OFF AND COUNTERCLAIM—PARTIES.

Accordingly plaintiff, in an action for breach of a land contract stipulating for the conveyance of property that defendant and his wife owned jointly, was liable for the use of the premises while he remained in possession, the wife refusing to execute a deed and not being a party to the contract, was not a necessary party in order to permit the husband to recover rentals as a counterclaim.

Error to Van Buren; Des Voignes, J. Submitted October 18, 1912. (Docket No. 106.) Decided March 21, 1913. Rehearing denied June 2, 1913.

Assumpsit by Harrison S. Way against Herbert L. Root for breach of a contract to convey land to plaintiff's

assignor. . Judgment for plaintiff. Defendant brings error. Reduced and affirmed.

*Titus, Van Horn & Titus,* for appellant.

*David Anderson,* for appellee.

Steere, C. J. This action is brought to recover damages for breach of a land contract given by defendant on February 20, 1908, agreeing to sell and convey to George Way, son of plaintiff, for the sum of $300, a tract of land, containing three and a fraction acres, situate in S. W. ¼ of section 34, in Pine Grove township, Van Buren county. The contract was in writing, and signed by both said Root and Way. By its terms a payment of one-half was to be made at once and $50 per year for three successive years, with interest, at 6 per cent. per annum, defendant to give a deed of the premises when Way had fully performed on his part. The contract was silent as to possession. There was a small house on the property, in which Way was residing with his family as a tenant of Root at the time of the purchase. He continued his residence there, and kept possession of the property until after the payments were completed. He made the first payment of $150 on receiving the contract, and the subsequent payments on or before the time they fell due, until the purchase price was fully paid. Root accepted them all, and indorsed them on the contract.

Soon after the last payment, Root promised to give Way a deed as soon as he could see a man named Kingsley, who lived in the township, and have him write out the deed. Some time later, in a conversation on the subject, he admitted Way had fully performed, but stated it was impossible to give him a deed owing to Mrs. Root's refusal to join in the conveyance. Various interviews and negotiations were had, during which the parties together interviewed an attorney, who advised them to try to persuade Mrs. Root to sign, and to get together and fix it up amongst themselves. All attempts in that direction failed,

and no deed was ever given. It appears, undisputed, that the property was part of a 60-acre farm, the title to which rested in Root and his wife as tenants by entirety. This fact was first learned by Way during the negotiations after he had made full payment on his contract. On September 11, 1911, George Way and wife assigned their interest in said contract to his father, the plaintiff, and moved onto a 40 acres across the road which the father had sold to George, leaving the house they had formerly occupied vacant, though some of their furniture remained there until later.

Plaintiff having received an assignment of the contract, demanded a deed of the premises, and, being refused, began this suit September 26, 1911. November 3, 1911, he served written notice on defendant that he had not been in possession of the property since obtaining assignment of the contract, and claimed no right of possession. November 17, 1911, defendant tendered and paid into court $244.61 to cover damages and costs, which tender was refused as insufficient. Plaintiff's declaration contained both the common counts and special counts on the contract. A demurrer to the declaration was overruled, and defendant then pleaded the general issue, giving notice of special defenses, including tender. ` The case was tried before a jury, resulting in a verdict and judgment in favor of plaintiff for $650, and defendant has removed the case to this court for review upon writ of error.

At the trial, after counsel for plaintiff had made his opening statement to the jury, counsel for defendant moved the court to require plaintiff to make an election of counts, saying:

"Now, they must either go to trial upon the contract, or they must go to trial upon the common counts in assumpsit. They cannot do both."

This motion was overruled, and error is assigned on such ruling; it being defendant's claim that the counts are inconsistent, and the case was submitted to the jury on a

"double-barreled proposition." Where counts in a declaration are inconsistent and contradictory, the theory and facts of one conflicting with those of another, plaintiff should be required to elect and not be allowed to take repugnant positions. Neither can a plaintiff abandon the theory on which he has tried his case under one count and recover under a conflicting one. Numerous cases are cited by defendant fully sustaining these well-recognized principles, but we are unable to find that such repugnancy or misjoinder of counts exists here.

Counsel for plaintiff in his opening statement said:

"The plaintiff relies on his contract. This is not a suit brought on the theory of rescission. This is a suit brought on the theory of full and complete performance on our part and failure to perform on the part of the defendant, and for damages by reason of his failure to perform."

This claim was consistently adhered to during the trial. We think the practice (and ruling of the court) are in harmony with the import of *Doty* v. *Nixon*, 109 Mich. 266 (67 N. W. 116), *Glover* v. *Radford*, 120 Mich. 542 (79 N. W. 803), and certain language found in *Wyatt* v. *Herring*, 90 Mich. 581 (51 N. W. 684), which is cited by defendant, and holds, as that case was presented, plaintiff could not abandon the theory on which he tried the case under a special count on contract and recover on a *quantum meruit* for the value of services under the common counts. The court there said:

"It is undoubtedly true that, had the plaintiff upon the trial given testimony under his common counts showing what his services were worth for the work and labor performed by him for the defendant in procuring a sale of the property, he would have had a right to submit that question to the jury, but his whole case was based upon his special count and all of his testimony directed to the contract as claimed by him."

The counts in this case cover the same cause of action and recovery could be had under either on the same testimony according as the jury found the facts to be. The

special count sets up the contract, full performance by George Way, failure to perform by defendant Root, and assignment of the contract to plaintiff. If the jury found from the testimony that defendant acted in bad faith, the measure of damages would be, under this count, the value of the property contracted to be conveyed at the time of the breach, if in good faith, the money paid with interest, and recovery would be limited to the latter amount under the common counts. Where the testimony is along the same lines and a portion of the facts in relation to which there is testimony would justify one verdict, and all the facts claimed would, if found by the jury, justify a larger verdict, the plaintiff is not required to prejudge what he will be able to convince the jury of, but may plead to meet the contingency, so long as his position is not inconsistent and misleading. In such case an election of counts is usually discretionary. *Cook* v. *Perry*, 43 Mich. 623 (5 N. W. 1054); *McLennan* v. *McDermid*, 50 Mich. 379 (15 N. W. 518).

It is contended in behalf of defendant that possession of the premises had not been restored or tendered to him at the time this action was begun; that it was incumbent on plaintiff, before recovery could be had, to allege in his declaration and prove on the trial whether or not the vendee went into possession under his contract, and, if so, that he had tendered repossession. This objection could be urged with more force had the contract of purchase provided for possession. Possession prior to full performance is not a part of the estate bargained for according to the instrument of purchase. George Way was occupying as a tenant of defendant when the contract was made, but was not residing on the premises when suit was brought. That some of his effects still remained in the house might raise a material question as to his yet technically being in possession, if the contract had given him possession, but it was silent on that subject. He being in possession as a tenant when the contract of purchase was made, it would not necessarily change the nature of his occupancy. The

contract for a deed containing no stipulation as to the time when the vendee might occupy the premises, it is construed as entitling him to possession only on full performance by him and receipt of his deed. *Druse* v. *Wheeler*, 22 Mich. 439; *Gault* v. *Stormont*, 51 Mich. 636 (17 N. W. 214).

Plaintiff's action for damages in this case is not, properly speaking, based upon a rescission of the contract, but upon and in affirmance of it on plaintiff's part, and because of a breach by defendant. Where the vendor is guilty of a failure to perform, and the vendee has made full performance, the latter may proceed in equity for specific performance where performance is possible, or by an action at law for damages. In such case it is not necessary that the purchaser should rescind the contract, restore possession, or otherwise place the vendor in *statu quo* in order to maintain the action. *Miller* v. *Roberts*, 169 Mass. 134 (47 N. E. 585); *Fletcher* v. *Button*, 4 N. Y. 396; 39 Cyc. p. 2088; *Stockham* v. *Cheney*, 62 Mich. 10 (28 N. W. 692).

It is contended in behalf of defendant that the contract was void from its inception, and therefore cannot be made the basis of a cause of action, for the reason that the land described in it was owned by defendant and his wife together as tenants by entirety, and she did not join in executing the instrument. That the contract is invalid in so far as it is powerless to affect her interests in, or the title to, the property it describes is undoubtedly true. Neither a husband nor wife can alone convey or incumber the estate vested in them as tenants by entirety. In that light and for such purpose such an instrument has been held void by this court. Counsel for defendant cite numerous cases to that effect and especially refer to *Naylor* v. *Minock*, 96 Mich. 182 (55 N. W. 664, 35 Am. St. Rep. 595), wherein it is said in substance:

" Neither the husband nor the wife could convey the estate vested in them in the entirety, unless both joined, and any instrument by which either attempted to make such conveyance would be void."

" The term ' void ' is perhaps seldom, unless in a very clear case, to be regarded as implying a complete nullity; but it is, in a legal sense, subject to large qualifications, in view of all the circumstances calling for its application and the rights and interests to be affected in a given case." *Brown* v. *Brown,* 50 N. H. 538.

This rule is recognized in *Lawrence* v. *Vinkemulder,* 157 Mich. 294 (122 N. W. 88), as applicable to the decisions of this court where the term is used in holding conveyances void as an attempt to convey; it being there said:

" The statements of the court in these cases that such contracts were ' wholly invalid,' ' a nullity,' ' absolutely void,' etc., must be considered as made with reference to the question involved."

It was there held by a divided court that a contract to convey the defendant's homestead, not executed by his wife, was invalid to create a right of action for damages, but the opinion sustaining that principle as to homesteads, which are specially guarded by constitutional provision, recognized the distinction, and says:

" The case of *Dikeman* v. *Arnold,* 78 Mich. 456 [44 N. W. 407], is not inconsistent with this conclusion. That case differs from this in that the contract covered lands not embraced within the homestead."

In the case at bar none of the land covered by the contract was embraced within a homestead.

There is no limit on the amount or value of the realty which husband and wife may hold as tenants by entirety as in case of a homestead, and they are not therefore analogous. Such a holding is not protected by any constitutional provision, and is not regarded by the courts with the same tender consideration as homestead rights, involving a home and shelter for the family. It is a species of title which may, and sometimes does, afford opportunity to sequester substantial assets from just liabilities. When land is so held, neither can affect the other's or his or her own rights in the property by a separate transfer.

An agreement to convey, though invalid to affect the title to real estate, in whole or in part, may yet be valid between the parties as a basis for the recovery of damages by reason of its breach. In *Miller* v. *Smith*, 140 Mich. 524 (103 N. W. 872), where defendants, having only a partial interest as heirs in certain real estate, contracted to sell the same and give perfect title, this court said:

"The fact that specific performance could not be enforced would not bar plaintiff from his right of action at law to recover damages for such failure."

This rule is too well settled to call for further discussion or citation of authorities. The fact that the relation of husband and wife is involved, and she has an interest in the property, does not necessarily militate against that rule. In the case of *Dikeman* v. *Arnold, supra,* defendant made a contract, not signed by the wife, for the sale of certain land, a part of which was their homestead. The wife would have a dower interest in all. The contract was held void as to the homestead and valid as to the rest in an action for nonperformance; this court saying:

"We think the contract was good between Arnold and the plaintiffs. He knew when he made it that he could not perform it without the signature of his wife to the deed. He, in effect, bound himself to procure such signature. It in no wise differs in this respect from a contract to sell lands which one does not own at the time he makes such contract. The fact that one did not have the legal title at the time he made the contract, and could not procure it afterwards, has never been recognized as a legal defense to an action for breach of the contract."

The instrument under consideration was not, properly speaking, an attempt to convey the title to the property described in it, but an agreement that the vendor would convey a good title at a stated future time, should the vendee perform on his part. When the time to convey arrived, it was not a case of inability on the part of Root to perform by reason of the subsequent discovery of a previ-

ous hidden and unsuspected defect in his title. The title was clear and without complications in himself and wife. There was nothing secret or hidden from him as to its condition. He knew, or is presumed to have known, how it was held. But, if he did not in fact clearly understand the nature of his wife's interests and rights, he at least knew he was a married man, and that to convey a complete title to this real estate his wife must join him. He testifies:

"I knew that when I came to make a deed my wife would have to sign it to make a good title."

With knowledge that his power of performance was contingent on her assent and co-operation, he contracted to convey this land, of which he was in possession and control, which involved no homestead rights, in which he had an interest and of which he claimed ownership, but which by reason of his wife's interest and the condition of its title he was powerless to convey, and therefore the vendee powerless to enforce specific performance.

Titles by entireties, as known under the common law, are virtually abolished in this State and survive only as to husband and wife, who at common law were one person, and as to whom it was, and is, held that when title to real estate passed to them together, during coverture, they as one person took but one estate seised by them singly *per tout*, and not *per my et per tout* as in case of joint tenancy. It is in most essentials like a joint tenancy, the owners holding the estate together and the survivor taking the whole, but modified by the common-law doctrine that the married pair is one person, and that neither half of that person in law can transfer or affect the title alone, but both halves must act together as a whole, while joint tenants may alien their interests individually at pleasure. This anomalous and *sui generis* species of tenancy remains, and is the well-settled law of this State under a clear line of decisions, and cannot be questioned. When the husband and wife have thus together acquired an unincum-

bered title to real estate they have laid up treasures, where, without their concerted action, neither moth, nor rust, nor thieves, nor creditors, nor anything else but death or the tax gatherer can divest them.  But beyond that we see no reason and know no authority for extending personal protection to the husband when he assumes to deal singly with property so held, and makes contracts in relation to it which he cannot perform.  We think that the husband's contract to sell realty held by himself and wife under a tenancy by entirety, though not susceptible of specific performance, nor valid to affect in any way either her or his title, has validity between him and the party to whom he contracts to sell as foundation for an action to recover damages for his breach of it.

As to the measure of damages, the trial court charged the jury that, in case it was found the defendant had not acted in good faith, it would be a fair market value of the land in the open market, as it then lay, taking into consideration the soil, the improvements, and uses for the purposes it was reasonably susceptible of under conditions as they then existed; but, if he acted in good faith, the measure would be the payments plaintiff had made, with interest, evidently being guided in giving such instructions by the rule stated in *Hammond* v. *Hannin*, 21 Mich. 374 (4 Am. Rep. 490).  Defendant excepts to this, and urges the equity rule stated in Warvelle on Vendors (2d Ed.) p. 229, that, in case of rescission, where the vendee has paid and been put into possession—

"The decree should in general restore the money to the purchaser without interest and the land to the vendor without rents and profits."

This is not a case of rescission by the vendee and a suit to recover the purchase money paid.  Therefore the latter rule is not controlling.  In commenting on *Hammond* v. *Hannin, supra,* counsel for defendant say it has not since been recognized by this court and the doctrine of good or

bad faith has been repudiated by the Federal courts and a large majority of the State courts of last resort:

"That the good or bad faith of a vendor should not enter into the matter at all. The vendee should not have his damages measured by any such standard."

Assuming, without admitting, that this view is correct, the defendant was not prejudiced by the instructions upon that point. The court submitted the question of good or bad faith to the jury with the instruction that, if the vendor did not act in good faith, the measure of damages would be the market value at the time of the breach, which is the general rule, with those elements eliminated, where the vendee is entitled to his bargain, and seeks to recover damages for wrongfully being deprived of it. That general rule has been recognized by this court, where the question of good or bad faith was apparently not involved (*Dikeman* v. *Arnold, supra*), and in *Allen* v. *Atkinson,* 21 Mich. 351, found in the same volume as the *Hammond Case,* Justice COOLEY, who wrote both opinions, sustains that rule. We find no prejudicial error in the charge of the court in that particular.

The court did, however, contrary to the request of defendant's counsel, distinctly instruct the jury that no offset could be allowed for rental or use of the premises by George Way during the time that he was in possession, for the reason that title to the property was in Root and his wife, and recovery for its use could only be had in a concerted action brought by them in their joint names. In this we think the court was in error. Dealing with the use and usufruct of the property is not the same as dealing with its title.

The rights of husband and wife in such an estate are purely common-law rights, to be tested and interpreted by the rules of that law as they existed before the wife was emancipated as to her individual property interests. By the common law the husband controlled his wife's estate, and had the usufruct, not only of real estate standing in

both their names, but of that sole seised by his wife, whether in fee simple, fee tail or for life. It remains the law that, while coverture continues, the husband has the control, use, rents, and profits of an estate by entirety. In this State, contrary to the general doctrine, as stated by some authorities (21 Cyc. p. 1201), it is held that growing crops on the land cannot be seized on execution by his personal creditors, but otherwise the general rule as to entireties remains as stated. *Morrill* v. *Morrill*, 138 Mich. 112 (101 N. W. 209, 110 Am. St. Rep. 306, 4 Am. & Eng. Ann. Cas. 1100). Under this law defendant had the possession, use, and control of the property. He was entitled to the income from it. While outside creditors might not reach it, he was empowered to take, deal with, and dispose of what it produced. He had a right to rent the property to others and collect the rent. He rented it to George Way, and put him in possession. His possession during the time in question was that of a tenant at will, or from month to month, defendant having no right to sell him the property and the contract of sale which he gave being silent as to possession. But he could lawfully collect rent from Way, and evict him in case of default, and Way could enforce a lease of the property given him by defendant alone. *Pray* v. *Stebbins*, 141 Mass. 219 (4 N. E. 824, 55 Am. Rep. 462). We are well satisfied that defendant, being entitled to the rent, could maintain an action in his own name to collect it, and we think he is entitled to recover it as a counterclaim when sued by the party owing it, or his assign.

Both George Way and defendant testified as to the rental value of the premises, but that issue was not submitted to the jury, and consequently the same was not allowed. George testified that up to the time of making the contract he was paying $4 per month. Defendant, who was manifestly interested in depreciating the value of the property for purpose of the trial, testified that he had rented the house and garden for 50c a week at one time, that George Way paid $1.75 per month, that the rental

value was perhaps $30 per year, and he presumed he had said it was worth $40 per year.

The contract was entered into February 20, 1908. This suit was begun September 26, 1911, shortly after George Way moved from the premises. Should plaintiff see fit to remit $175 from the judgment in this case, as a proper offset for rent, it will stand affirmed, without costs to either party, otherwise it is reversed and a new trial granted, with costs.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.